**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

TODD WESSINGER,

Plaintiff,

v.

Civil Action No. 3:26-cv-00957-JWD-SDJ

GARY WESTCOTT, et al.,

Defendants.

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY

Pursuant to this Court's Minute Entry and Order,[1] Plaintiff Todd Wessinger opposes Defendants' Motion to Stay Discovery[2] pending resolution of their Motion to Dismiss.[3]

## A. Defendants' entitlement to a stay of discovery is based on a facially meritless claim to sovereign immunity.

The motion to stay relies wholly on whether Defendants have advanced a plausible defense of sovereign immunity to Plaintiff's Complaint. They have not. Rather, Defendants attempt to convert an intervening circumstance of their own making—Secretary Westcott's October 16 declaration suggesting that he intends to "offer" Plaintiff to "elect" lethal injection with pentobarbital—into a sovereign immunity defense. But Defendants' well-defined statutory and operational responsibilities, as pleaded in the Complaint, plainly establish that they have "sufficient connection to enforcement" as required under Ex Parte Young, 209 U.S. 123 (1908). Far from undermining that conclusion, Secretary Westcott's declaration only confirms the clear

[1] ECF No. 22.
[2] ECF No. 20 ("Stay Mot."); ECF No. 20-1 ("Stay Mem.")
[3] ECF No. 19 ("MTD"); ECF No. 19-1 ("MTD Mem."); ECF No. 19-2 ("Westcott Decl.").

enforcement authority he exercises over the selection and implementation of the method of execution of Plaintiff.

No stay of discovery is required when the underlying immunity argument is meritless on its face. That is the case here.

**B. This Court is not prohibited from denying a stay of discovery where Defendants' immunity defense has no merit.**

The motion to dismiss makes two arguments: first, that sovereign immunity bars Plaintiff's claims, MTD Mem. at 5-9, and second, that the lawsuit is barred by lack of a justiciable case or controversy, id. at 9-11.[4] The motion to stay discovery is based exclusively on the sovereign immunity argument. Stay Mem. at 4-5. The memorandum in support of the underlying motion to dismiss asserts that "Defendants are state officials sued in their official capacities and are therefore entitled to sovereign immunity unless Plaintiff can satisfy the Ex parte Young exception." MTD Mem. at 5 (citing Tex. Democratic Party v. Abbott, 978 F.3d 168, 179 (5th Cir. 2020)). Defendants contend that having contested the applicability of Ex parte Young to them in the present case, they are automatically entitled to a stay of discovery. Stay Mem. at 4-5 (citing In re Paxton, 60 F.4th 252, 256 (5th Cir. 2023)).

Contrary to Defendants' argument, there is no iron-clad rule that the mere invocation of an immunity defense triggers a stay of discovery regardless of the merits of the claim of immunity. It is true that courts often stay discovery when a party asserts "a plausible defense of sovereign immunity." Fernandez v. La. Dept. of Child. & Fam. Servs., No. CV 24-289-BAJ-SDJ, 2025 WL 692357, at *2 (M.D. La. Mar. 4, 2025). But a stay is not warranted when the assertion of sovereign

[4] Defendants also assert that, if Plaintiff does not "elect" pentobarbital as the method for his execution, this civil action should be dismissed as an improper second or successive petition for habeas corpus. MTD Mem. at 11-13. No part of Defendants' stay motion is based on this hypothetical argument, which Plaintiff will address in opposing the motion to dismiss on its merits.

immunity is plainly meritless. Thus, in Mi Familia Vota v. Ogg, No. 22-50732, 2022 WL 23042551, at *1 (5th Cir. Oct. 7, 2022), the Fifth Circuit denied a request to stay discovery based on an assertion of sovereign immunity because plaintiffs alleged claims under the Voting Rights Act, which "explicitly abrogated sovereign immunity."

**C. Defendants' assertions of sovereign immunity are plainly without merit, given that they are charged with carrying out executions in Louisiana.**

A state official is a proper defendant in a suit for prospective injunctive relief, and therefore not shielded by sovereign immunity, where the official has "some connection with the enforcement of" the challenged law. Ex parte Young, 209 U.S. 123, 157 (1908); Jackson v. Wright, 82 F.4th 362, 367 (5th Cir. 2023). The requisite enforcement connection need not be substantial: even a "scintilla of enforcement" is sufficient. Tex. Democratic Party v. Abbott, 978 F.3d 168, 179 (5th Cir. 2020) (quoting City of Austin v. Paxton, 943 F.3d 993, 1002 (5th Cir. 2019)).

The Fifth Circuit has identified three "guideposts" to assist courts in determining whether that connection is sufficient: whether an official (1) has a particular duty to enforce the challenged law, rather than merely a generalized duty to enforce state law; (2) demonstrates a willingness to exercise that duty; and (3) exercises authority that compels or constrains compliance with the challenged law. Mi Familia Vota v. Ogg, 105 F.4th 313, 325 (5th Cir. 2024).

These guideposts are not ends unto themselves, as Defendants would have it; rather, they serve the ultimate inquiry into whether an official possesses the requisite enforcement connection. Id. at 330 (explaining that the guideposts "help ensure" that a defendant has the connection required by Ex parte Young); Jackson, 82 F.4th at 367-68 (expressly limiting its analysis to the two guideposts it deemed "relevant" and finding a sufficient enforcement connection without separately applying the additional guideposts). Indeed, the Fifth Circuit has cautioned that the

demonstrated-willingness guidepost "must not be understood so rigidly as to thwart its orienting purpose." Healthy Vision Ass'n v. Abbott, 138 F.4th 385, 398 (5th Cir. 2025).

Importantly, these guideposts have developed principally in cases challenging the constitutionality of statutes after their enactment but before their enforcement. In such cases, the threshold question is which state officials, if any, are responsible for enforcing the challenged statutory provisions. In Texas Democratic Party, for example, the plaintiffs challenged a Texas statute restricting eligibility for absentee voting, and the Fifth Circuit examined whether the Governor, Attorney General, and Secretary of State possessed sufficient enforcement authority over the particular provision at issue. 978 F.3d at 179-81. The court concluded that the Secretary was a proper defendant because her statutory responsibilities over absentee-ballot applications enabled her to compel or constrain local election officials, whereas the Governor and Attorney General lacked the requisite connection. Id. Similarly, in Mi Familia Vota, the court considered whether a district attorney's generalized prosecutorial authority sufficiently connected her to challenged election-law provisions that she had neither enforced nor threatened to enforce. 105 F.4th at 325-32. The court held that it did not. Id. These decisions thus address the difficulty of identifying an official whose authority to enforce a challenged statutory provision is sufficiently direct to permit prospective relief against that official.

That difficulty is largely absent where, as here, the alleged constitutional violation consists of affirmative governmental conduct carried out by identifiable officials. In that context, the relevant inquiry is whether the defendants possess authority over the challenged conduct and can be enjoined from carrying it out. Indeed, the Fifth Circuit has repeatedly applied Ex parte Young to challenges involving prison conditions and correctional practices. In Valentine v. Collier, 993 F.3d 270, 280 (5th Cir. 2021), the court held that the executive director of Texas's corrections

department and a prison warden were proper defendants because they possessed authority over the creation and implementation of the challenged prison policies.

Likewise, in Hope v. Harris, 861 F. App'x 571, 578 (5th Cir. 2021), the court expressly applied the compel-or-constrain requirement to officials responsible for maintaining allegedly unconstitutional conditions of confinement. Notably, it observed that "all institutional litigation involving state prisons" generally proceeds under Ex parte Young, explaining that "[t]he exception is so well established [in that context]" that such cases often do not even "mention[] . . . Ex parte Young." Id. (quoting Brennan v. Stewart, 834 F.2d 1248, 1252 n.6 (5th Cir. 1988)).[5] These cases illustrate that the requisite connection exists where officials possess authority to implement, maintain, or prevent the affirmative governmental conduct alleged to violate federal law.

Here, there can be little question that Defendants possess the requisite connection to the challenged method of execution. Plaintiff does not challenge a statutory prohibition enforced by some uncertain set of state actors. He challenges Louisiana's intended use of nitrogen hypoxia to execute him, and he has sued the three officials principally responsible for determining and carrying out that execution. Secretary Westcott is statutorily charged with selecting the method of execution. Compl. ¶¶ 23–24; La. R.S. 15:569(A)-(B).[6] Defendant Smith is responsible for the

[5] Along these lines, in the Fifth Circuit and beyond, methods of execution cases have been repeatedly decided on the merits without any courts raising issues regarding sovereign immunity. See, e.g., Hoffman v. Westcott, No. 25-169-SDD-SDJ, 2025 WL 763945, at *12 (M.D. La. Mar. 11, 2025) (Dick, J.) (granting preliminary injunction against Secretary Westcott and Warden Vannoy in Eighth Amendment challenge to nitrogen hypoxia), vacated, Hoffman v. Westcott, 131 F.4th 332 (5th Cir. 2025) (vacating injunction on Eighth Amendment grounds without addressing sovereign immunity); Nance v. Ward, 597 U.S. 159 (2022) (entertaining method-of-execution challenge against state corrections commissioner and prison warden in their official capacities); Bucklew v. Precythe, 587 U.S. 119 (2019) (adjudicating method-of-execution challenge against state corrections director, director of adult institutions, and prison warden); Glossip v. Gross, 576 U.S. 863 (2015) (adjudicating method-of-execution challenge against state corrections director, prison warden, and corrections board members).

[6] La. R.S. 15:569(A) provides that, "At the discretion of the secretary of the Department of Public Safety and Corrections and with no preference to the method of execution, every sentence of death shall be by one of the following methods:" (1) lethal injection, (2) nitrogen hypoxia, or (3) electrocution. La. R.S. 15:569(B) provides that, "Upon receipt of the warrant commanding the secretary to cause the execution of the person condemned as provided by law, the secretary shall, within seven days, provide written notice to the condemned person of the manner of execution."

technical implementation of Louisiana's execution procedures, including the development of the nitrogen-hypoxia system and Defendants' ongoing oversight of its implementation. Id. at ¶¶ 28–29. Defendant Vannoy oversees the institution where executions take place and is responsible for implementing DPSC's execution procedures and managing preparations for executions. Id. at ¶¶ 31–32. Their statutory responsibilities, operational authority, and prior testimony establish far more than a generalized connection to the challenged conduct.

Ultimately, Secretary Westcott's declaration only corroborates that he personally exercises the authority to determine Defendants' method of Plaintiff's execution, including the authority to select either nitrogen hypoxia or lethal injection as methods of Plaintiff's execution and to direct DPSC personnel accordingly. The question is not, as Defendants have framed it, whether Mr. Wessinger can "Identify Any Compulsion or Constraint to Execute Him by Nitrogen Hypoxia," but whether Defendants possess the requisite authority over the challenged execution methods. Defendants' post-filing creation of an unprecedented "election" procedure unauthorized by Louisiana law or Department regulations, the implementation of which would necessarily implicate all three Defendants' responsibilities, confirms what was already clear: they control the conduct challenged here. That demonstrated authority more than satisfies Ex parte Young's sufficient-connection requirement.

**D. The Court should recognize and reject Defendants' attempt to rebrand a mootness argument as an assertion of sovereign immunity.**

Defendants' reliance on their newly created "election" procedure, and their speculations about the consequences of Plaintiff either electing or failing to elect a particular method of execution, have nothing to do with sovereign immunity. In reality, they are claiming that the availability of an "election" renders the Complaint moot. Their argument relies on the concept of "voluntary cessation," not any form of sovereign immunity. "It is the doctrine of mootness, not

standing, that addresses whether 'an intervening circumstance [has] deprive[d] the plaintiff of a personal stake in the outcome of a lawsuit.'" West Virginia v. EPA, 597 U.S. 697, 719 (2022) (quoting Genesis HealthCare Corp. v. Symczyk, 569 U.S. 66, 72 (2013)).

But it is Defendants' burden to establish mootness by voluntary cessation,[7] and they do not carry that burden here. As noted above, Secretary Westcott's "election" procedure is contrary to Louisiana statutory law and jurisprudence and has no basis in the regulations of the Louisiana Department of Public Safety and Corrections. Thus, there is no legal requirement that Secretary Westcott honor any "election" made by Plaintiff or any other condemned prisoner. As a result, there is no certainty that any "election" by Plaintiff would be legally enforceable against Defendants should they decide to employ nitrogen hypoxia after all.

Adoption of this illusory procedure, after the filing of the Complaint and after this Court has already convened one status conference and entered an order for expedited discovery procedures, comes far short of the showing needed to establish mootness. By way of example, in Netflix, Inc. v. Babin, 88 F.4th 1080, 1089-90 (5th Cir. 2023), the Fifth Circuit held that a prosecutor's post-filing dismissal of an indictment without prejudice and adoption of a conditional non-prosecution policy did not moot Netflix's constitutional challenge. The court explained that the presumption of good-faith governmental cessation is defeated when "there is no controlling statement of future intention, the change in conduct is suspiciously timed, and the defendant continues to defend the challenged behavior." Id. at 1089-90. All these conditions are present here.

Plaintiff will respond more completely to Defendants' justiciability arguments in opposition to the motion to dismiss. For present purposes, it is sufficient to note that Defendants'

---

[7] See Tucker v. Gaddis, 40 F.4th 289, 295–96 (5th Cir. 2022) (Ho, J., concurring) (emphasizing that defendants seeking dismissal based on voluntary cessation bear a "'stringent' and 'formidable' burden" and that excusing the government's failure to provide assurances against recurrence would "make a mockery" of that burden).

motions to dismiss and for stay of discovery are merely an effort to shoehorn a justiciability argument into one for sovereign immunity to take advantage of the Fifth Circuit's recent decisions on stays of discovery when immunity from suit is asserted. This Court should recognize and reject this artifice.

**E. Plaintiff will be severely prejudiced by a stay of discovery.**

As the Court knows, the schedule for discovery and the trial setting have been compressed to allow this Court to make an expedited adjudication of Plaintiff's Eighth Amendment claims. Discovery is set to begin on October 22 and close on December 22—a mere two months.[8] The Court noted, both at the first status conference and in the Expedited Scheduling Order, that the exigencies attending a possible warrant for Plaintiff's execution required this compressed schedule, and further justified denial of any request for a stay of discovery.[9]

Granting a stay of discovery to consider this feeble immunity defense, which Defendants will seek to leverage into a longer stay by taking an interlocutory appeal on the issue, will wipe out Plaintiff's opportunity to secure fact and expert discovery to support his claims that nitrogen asphyxiation violates the Eighth Amendment. During the pendency of any stay, an execution warrant may be issued, prompting Defendants to proceed to executing Plaintiff by nitrogen asphyxiation (regardless of any "election" or lack thereof by Plaintiff) before the stay is lifted, forcing Plaintiff to seek a preliminary injunction without the benefit of discovery.

Such delay is unnecessary. The Complaint on its face and the declaration of Secretary Westcott volunteered by Defendants make unequivocally clear that all three named Defendants are

---

[8] ECF No. 15, Expedited Scheduling Order.

[9] As the Court stated after the September 23, 2026, status conference, "The Court reiterates that any Rule 12 motion will be subject to an expedited briefing schedule and that discovery will not be stayed while the motion is pending." Minute Entry and Order, ECF No. 11 at 3.

proper parties under Ex parte Young. There is no basis to stay discovery where the asserted immunity claim is patently without merit, as it is here.

### F. Conclusion

Plaintiff respectfully requests that the Court deny the motion to stay discovery.

Respectfully submitted,

*/s/ James W. Craig*

Emily M. Washington (La. Bar No. 34143)
James W. Craig (La. Bar No. 33687)
Jack M. Stephens (La. Bar No. 41468)
Roderick and Solange MacArthur Justice Center
4400 S. Carrollton Ave., New Orleans, LA 70119
Phone: 504-620-2259
Fax: 504-208-3133
emily.washington@macarthurjustice.org
jim.craig@macarthurjustice.org
jack.stephens@macarthurjustice.org

*Counsel for Plaintiff*

Dated: October 21, 2026