**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| TODD WESSINGER,<br><br>PLAINTIFF,<br><br>v.<br><br>GARY WESTCOTT, in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections, et al.,<br><br>DEFENDANTS. | Civil Action No. 3:26-cv-957<br><br>Judge: JWD - SDJ |

# REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. SOVEREIGN IMMUNITY BARS PLAINTIFF'S CLAIMS ........ 1

II. EVEN IF PLAINTIFF COULD OVERCOME SOVEREIGN IMMUNITY, OTHER JUSTICIABILITY PROBLEMS FORECLOSE THIS SUIT. ........ 5

A. Plaintiff Has No Standing. ........ 5

B. Plaintiff's Opposition Proves This Is a § 2254 Claim. ........ 9

CERTIFICATE OF SERVICE ........ 12

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Am. Airlines, Inc. v. Allied Pilots Ass'n*,
968 F.2d 523 (5th Cir. 1992) .......... 8

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*,
103 F.4th 393 (5th Cir. 2024) .......... 7

*Brown v. Buhman*,
822 F.3d 1151 (10th Cir. 2016) .......... 7, 8

*City of Austin v. Paxton*,
943 F.3d 993 (5th Cir. 2019) .......... 4

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 5, 6, 7

*FBI v. Fikre*,
601 U.S. 234 (2024) .......... 6, 8

*Glossip v. Gross*,
576 U.S. 863 (2015) .......... 3

*Mi Familia Vota v. Ogg*,
105 F.4th 313 (5th Cir. 2024) .......... 2, 3, 4

*Murthy v. Missouri*,
603 U.S. 43 (2024) .......... 5

*Nance v. Ward*,
597 U.S. 159 (2022) .......... 5, 9, 10

*Nelson v. Landry*,
714 F. Supp. 3d 790 (M.D. La. 2024) .......... 6

*Netflix, Inc. v. Babin*,
88 F.4th 1080 (5th Cir. 2023) .......... 6

*Paterson v. Weinberger*,
644 F.2d 521 (5th Cir. 1981) .......... 6

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984) ............................................................................................ 4

*Pizzuto v. Derrick*,
No. 21-359, 2026 WL 353433 (D. Idaho Feb. 6, 2026)............................................ 8

*Sossamon v. Lone Star State of Tex.*,
560 F.3d 316 (5th Cir. 2009) ........................................................................... 7, 9

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*,
142 F.4th 819 (5th Cir. 2025)............................................................................. 8

*Wang v. Paxton*,
161 F.4th 357 (5th Cir. 2025)............................................................................. 7

*Ex parte Young*,
209 U.S. 123 (1908) ................................................................................... 1, 2, 3

**Statutes**

18 U.S.C. § 401(2) ................................................................................................. 8

18 U.S.C. § 1621(2) ............................................................................................... 8

18 U.S.C. § 1746(2) ............................................................................................... 8

28 U.S.C. § 2254.............................................................................................. 9, 10

La. R.S. 15:569(A) .................................................................................................. 4

## INTRODUCTION

Plaintiff filed this lawsuit based on his speculation that, if and when a warrant for his execution is issued, the Secretary would select nitrogen hypoxia as the method of execution. The Secretary then filed a sworn declaration, punishable by perjury, explaining that Plaintiff's speculation is mistaken. Instead, Plaintiff will be given the option to pick his proposed alternative, pentobarbital, and "if Plaintiff elects it," the Secretary "will choose pentobarbital" as the method of execution. ECF 19-2 ¶ 7 (Westcott Decl.). If there were any lingering uncertainty over whether execution by pentobarbital will occur, the Secretary's Supplemental Declaration, Ex. 1, eliminates it. The Secretary explains that the "State has secured a supplier for pentobarbital," "has placed a monetary deposit for 15 grams of pentobarbital to execute Plaintiff," and "will receive the pentobarbital within 48 hours of the State's request for [it]." Supp. Decl. ¶ 6. These are affirmative efforts and sworn statements that Plaintiff will be executed by pentobarbital once he makes that election. That reality defeats any reliance on *Ex parte Young*, forecloses standing, and demonstrates that Plaintiff's lawsuit is not about avoiding pain but evading execution. This Court should dismiss for lack of jurisdiction.

## ARGUMENT

### I. Sovereign Immunity Bars Plaintiff's Claims.

Plaintiff cannot explain how Defendants are proper *Ex parte Young* defendants when they have no demonstrated willingness to use the two-drug series nor will they compel or constrain Plaintiff to be executed via nitrogen hypoxia. *Ex parte Young* always entails a "case-by-case approach," so Plaintiff's invocation of other prisoner-

related cases or even other methods-of-execution cases gets him nowhere. *Mi Familia Vota v. Ogg*, 105 F.4th 313, 333 (5th Cir. 2024) (citation omitted). And his attempts to recast his failure to satisfy *Ex parte Young* as solely an Article III problem is at war with precedent.

**A.** Start with the two-drug series. Plaintiff does not acknowledge his assertion that "Defendants intend to execute [him] by nitrogen hypoxia," not the two-drug series. Compl. ¶ 13. Plaintiff does not allege that Defendants have ever executed someone via the two-drug series or that they have the drugs available to be used in an execution. And he concedes that "[n]o state has carried out an execution using midazolam and hydromorphone since … 2014." *Id.* ¶¶ 106, 146. Plaintiff fails to show any demonstrated willingness to execute him by the two-drug series. *See Mi Familia Vota*, 105 F.4th at 330. Sovereign immunity bars that challenge—and Plaintiff does not even try to refute that immunity problem.

**B.** As to nitrogen hypoxia, Plaintiff fares no better. He tries to collapse the *three* guideposts required to show a defendant is amenable to suit under *Ex parte Young* into one general question about an official's duty to enforce. ECF 26 (MTD.Opp.) at 5. The "particular duty to enforce the statute in question," however, is a necessary, yet not sufficient, condition for satisfying *Ex parte Young*. *Mi Familia Vota*, 105 F.4th at 325 (citation omitted). After all, the *Mi Familia Vota* defendant was a prosecutor with the "authority to bring criminal prosecutions within her jurisdiction, including for violations of the Texas Election Code" that were challenged in that lawsuit, but the Court nevertheless concluded she was "not [a] proper *Ex parte*

*Young* defendant" based on the "other enforcement connection guideposts." *Id.* at 328–29. That same analysis applies here.

Even with statutory authority, a defendant can "demonstrate[] [his] *un*willingness to enforce" the challenged act through a declaration or stipulation and can lack actual compulsion or constraint. *Id.* at 330–33. These requirements flow directly from the requirement that a plaintiff allege an *ongoing* violation of federal law in order to invoke *Ex parte Young*. *Id.* at 332.

Here, the claimed violation is using nitrogen hypoxia rather than pentobarbital. Compl. at 3, 4, 27, 29, 30, 31, 32, 33, 34, 36, 37. So Plaintiff has to show he will be "compel[led]" to face nitrogen hypoxia or "constrain[ed]" from execution by pentobarbital to show any ongoing constitutional violation. *Mi Familia Vota*, 105 F.4th at 332. But the Secretary's Declaration makes clear that Plaintiff will be executed by his preferred method if he so chooses, Westcott Decl. ¶¶ 7–8, and his Supplemental Declaration affirms pentobarbital is available to the State, Supp. Decl. ¶ 6.[1] The Secretary is not compelling or constraining Plaintiff in any way—he is exercising his discretionary authority to make his own selection based on Plaintiff's rejection of execution via nitrogen hypoxia and election of pentobarbital instead.

It is utterly implausible that Plaintiff would refuse to make that election: He says using pentobarbital will "significantly reduce the risk" of "torture" he claims he

[1] There is no factual dispute that pentobarbital is readily available to the State—Plaintiff specifically pleads this point. Supp. Decl. ¶ 6; Compl. ¶¶ 9–10, 14, 107, 109. In any event, if Defendants could not obtain pentobarbital to carry out an execution, this lawsuit would have to be dismissed on the merits. *Glossip v. Gross*, 576 U.S. 863, 878 (2015) (noting plaintiffs "fail[ed] to satisfy their burden of establishing that any risk of harm was substantial when compared to a known and available alternative method of execution" when the alternative was "unavailable to Oklahoma's Department of Corrections").

would experience with nitrogen hypoxia. Compl. ¶¶ 11, 14, 51–72. "[T]he mere fact that the [Secretary] *has* the authority" to choose nitrogen hypoxia "cannot be said to 'constrain'" Plaintiff from exercising the choice to select pentobarbital instead. *City of Austin v. Paxton*, 943 F.3d 993, 1001 (5th Cir. 2019); *contra* MTD.Opp.8 (claiming the question is "whether Defendants possess the requisite authority over the challenged execution methods"). Under these circumstances, Plaintiff has not shown that the Secretary "would compel or constrain the Plaintiff[] in order to 'strip' [Defendants] of [their] sovereign immunity." *Mi Familia Vota*, 105 F.4th at 332–33 (citation omitted).

To the extent Plaintiff implies that Louisiana law precludes the Secretary from offering Plaintiff a choice, that state-law theory independently requires dismissal because it eliminates "the entire basis for the doctrine of [*Ex parte*] *Young*." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Moreover, he provides zero support for his theory. The Secretary has "the discretion" to select among the methods of execution authorized by law. La. R.S. 15:569(A). The Secretary has explained how he will exercise his discretion once he receives an execution warrant for Plaintiff: He will "allow Plaintiff to elect lethal injection via pentobarbital as his method of execution," and if Plaintiff does so, the Secretary "will choose pentobarbital." Westcott Decl. ¶¶ 7–8. Nothing precludes the Secretary from choosing the condemned's own preferred method authorized by Louisiana law and available to the State.

Plaintiff remarkably claims he has not "chosen" to be executed by pentobarbital. MTD.Opp.9–11. But there is no question that Plaintiff has invoked

this Court's jurisdiction based on one repeated assertion: The State has no legitimate reason to not execute him via pentobarbital, which Plaintiff believes would significantly reduce a substantial risk of severe pain. Compl. at 3, 4, 27, 29, 30, 31, 32, 33, 34, 36, 37, 38. The entire point of identifying another method is "to propose an alternative way for the State to carry out his death sentence." *Nance v. Ward*, 597 U.S. 159, 169 (2022). Thus, by proposing pentobarbital as his alternative method, Plaintiff *has* both demanded that the State use pentobarbital and confirmed that, if given the choice between pentobarbital and nitrogen hypoxia, he will pick pentobarbital. Sovereign immunity precludes this lawsuit.

## II. Even if Plaintiff Could Overcome Sovereign Immunity, Other Justiciability Problems Foreclose This Suit.

### A. Plaintiff Has No Standing.

Plaintiff's opposition fails to explain how he faces a substantial risk of being executed via the two-drug series or nitrogen hypoxia. He therefore lacks standing. *Murthy v. Missouri*, 603 U.S. 43, 69 (2024); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013).

The two-drug series challenge is easily dismissed: Plaintiff alleged that Defendants would select nitrogen hypoxia, not the two-drug series. He can only be executed once. He said it would be via nitrogen hypoxia. So he has foreclosed any substantial risk that he would face the two-drug series.

As to nitrogen hypoxia, Plaintiff appears to assume that merely because a method of execution is authorized by law, that is sufficient to show a substantial risk of injury. *Clapper* forecloses that argument: Mere "authoriz[ation]" to take an action

is not enough to show that the action "imminently" will be taken. 568 U.S. at 411–13 (emphasis omitted). Under no execution warrant, Plaintiff "ha[d] no actual knowledge" of how the Secretary will select his method of execution. *Id.* at 411. He instead could "only speculate as to how [the Secretary] will exercise [his] discretion." *Id.* at 412. But Plaintiff's "speculative chain of possibilities" about what could happen after an execution warrant issues "does not establish that injury based on [a] potential future [execution by nitrogen hypoxia or the two-drug series] is certainly impending." *Id.* at 414. And if such conjecture were permissible, the Secretary's Declaration forecloses it now. Because he bears the burden to prove jurisdiction, Plaintiff had to provide evidence of his own to contest those sworn statements. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). He did not.

Plaintiff's attempt to recast this standing problem as a mootness problem is misdirection. This is not a case where Defendants obtained an execution warrant, told him that he would be executed via nitrogen hypoxia, and then changed their minds after Plaintiff filed suit. Rather, before any warrant issued and thus before Defendants could take any action, Plaintiff simply assumed that the Secretary would exercise his discretion to select nitrogen hypoxia no matter what. Compare that with *FBI v. Fikre*, 601 U.S. 234, 236, 239 (2024), where "the government placed [Fikre] on the No Fly List" and removed him after the lawsuit was filed; or *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1085 (5th Cir. 2023), where the prosecutor "criminally charged Netflix" before the federal lawsuit commenced; or *Nelson v. Landry*, 714 F. Supp. 3d 790, 796 (M.D. La. 2024), where "Plaintiffs were required to obtain and carry identification

cards branded with 'SEX OFFENDER'" and the State Office of Motor Vehicles "branded" their driver's licenses with that label, with the practice stopping only after the litigation started. In each of those cases, the government already had taken concrete action against the plaintiffs, so there was no question that the government would act as the lawsuits claimed. Here, by contrast, Plaintiff filed this lawsuit before Defendants ever had a chance to act. It is thus his burden to prove a substantial risk that they will act as he claims, not Defendants' responsibility to disprove it. *Clapper*, 568 U.S. at 412. And the Secretary "is entitled to the presumption of good faith": He "has said that he will [choose pentobarbital if Plaintiff elects it], and this court takes him at his word." *Wang v. Paxton*, 161 F.4th 357, 363 (5th Cir. 2025).

Even if this hypothetically were a mootness issue, that would not save this suit from dismissal. "[W]ithout evidence to the contrary, [courts] assume that formally announced changes" by a government actor "are not mere litigation posturing." *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 393, 395 (5th Cir. 2024). It is clear through the Secretary's sworn declarations that Plaintiff will be executed via pentobarbital. *See Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009). Under penalty of perjury, the Secretary stated he "will choose pentobarbital if Plaintiff elects it." Westcott Decl. ¶ 7. This assertion "contained in a declaration that was signed under penalty of perjury and submitted to [this] federal district court" cannot be treated as litigation posturing. *See Brown v. Buhman*, 822 F.3d 1151, 1171 (10th Cir. 2016) (finding case moot in light of sworn declaration). A "violation of the declaration would expose [the Secretary] to

prosecution for perjury or contempt." *Id.* (citing 18 U.S.C. §§ 401(2), 1621(2), 1746(2)); *see also Am. Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 525–27, 530–31 (5th Cir. 1992) (discussing sanctions and contempt convictions against attorneys based on fraudulent declarations relied on by the court to grant a motion). And the Secretary's statement is unequivocal:

> Upon receipt of a warrant of execution for Plaintiff, I will direct a DPSC official or employee to present Plaintiff with the attached "Election of Execution Method" Form and Receipt ("Exhibit A") to allow Plaintiff to elect lethal injection via pentobarbital as his method of execution. If Plaintiff elects lethal injection via pentobarbital, lethal injection will be carried out using pentobarbital.

Westcott Decl. ¶ 8. The Secretary's sworn statements thus end this case.

Plaintiff's reliance on *Pizzuto v. Derrick*, No. 21-359, 2026 WL 353433 (D. Idaho Feb. 6, 2026), is misplaced. While the defendants there stated an "inten[t]" to use a firing squad, they lacked facilities for it, staff trained to carry it out, and a protocol. Declaration of Bree Derrick ¶¶ 10, 13–15, *Pizzuto*, No. 21-359 (D. Idaho Oct. 27, 2025), ECF 244-3. Given these uncertainties, the court did not find the case moot. *Pizzuto*, 2026 WL 353433 at *2. That is a far cry from this case where Plaintiff has specifically pleaded, and Defendants agree, that pentobarbital is readily available to execute Plaintiff under an existing protocol. Compl. ¶¶ 9–10, 14, 107–09; Supp. Decl. ¶ 6. Defendants' continued belief that nitrogen hypoxia does not violate the Eighth Amendment is likewise of no moment. *Cf. Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 142 F.4th 819, 826 (5th Cir. 2025) ("[O]ften a case will become moot even when a defendant 'vehemently' insists on the propriety of 'the conduct that precipitated the lawsuit.'" (quoting *Fikre*, 601 U.S. at 244)).

Plaintiff's only other mootness hope (again, this is not a mootness issue) is to say that pentobarbital may become unavailable to the State. That hope cannot be squared with his assertions that pentobarbital is readily available to the State to execute him—indeed, it would end this lawsuit on the merits. Compl. ¶¶ 9–10, 14, 107, 109. In all events, "absent evidence that the voluntary cessation is a sham for continuing possibly unlawful conduct," courts "will not require some physical or logical impossibility that the challenged policy" could recur. *Sossamon*, 560 F.3d at 325. Plaintiff has no evidence of a sham, only the far-fetched scenarios where (1) the Secretary violates his sworn assertions, inviting perjury and contempt charges from this Court, or (2) pentobarbital is actually not available to the State despite his allegations otherwise. There is no Article III jurisdiction.

**B. Plaintiff's Opposition Proves This Is a § 2254 Claim.**

That says nothing of the other independent jurisdictional bar. Section 1983 can only be used when a plaintiff "make[s] the case that the State really can put him to death, though in a different way than it plans," and "accepts the validity of the State's taking" the steps designed to carry out his proposed alternative. *Nance*, 597 U.S. at 169, 171; *see* ECF 19-1 at 11–13. Plaintiff's arguments, however, demonstrate that this lawsuit is not really about how the State can put him to death via pentobarbital, but instead about barring the State from executing him at all.

Specifically, Plaintiff devotes pages of his opposition strangely complaining about his ability to choose his preferred alternative. MTD.Opp.9–11. But the reason he was required to provide a proposed alternative for his § 1983 claim is to "provid[e] the State with a veritable blueprint for carrying the death sentence out." *Nance*, 597

U.S. at 169. Now that the State has agreed to implement his blueprint for execution, Plaintiff's decision to cry foul and suggest he does not want pentobarbital demonstrates that he is not sincere about avoiding a purported Eighth Amendment violation. Instead, each plea for pentobarbital, *see* Compl. ¶¶ 9, 10, 11, 12, 14, 99, 107, 108, 109, 110, 111, 120, 121, 122, 123, 124, 125, 126, 137, 138, 139, 140, 141, 147, 148, 149, was apparently an empty recital designed to stall or avoid his execution, *see* MTD.Opp.9–11. Plaintiff's baseless reluctance to agree that pentobarbital is available to the State makes this even more evident. If Plaintiff does not believe the State can execute him via pentobarbital, then why identify pentobarbital as his proposed alternative unless he is trying to obtain an order that effectively precludes his execution? *Contra* Compl. at 29 (paragraphs under the heading "Single-Drug Pentobarbital Is a Feasible and Readily Implemented Alternative"); *id.* ¶ 126 ("DPSC has no legitimate penological justification for refusing to use the single-drug pentobarbital protocol to execute Mr. Wessinger."). An Eighth Amendment claim based on a drug Plaintiff believes the State cannot obtain is not just contrary to the complaint—it is an attempt to "foreclose the State from implementing[] the death sentence" altogether. *Nance*, 597 U.S. at 170. That is a § 2254 claim, *id.*, over which there is no question that this Court lacks jurisdiction. Dismissal is warranted.

Dated: October 28, 2026

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General

*/s/ Elizabeth L. Brown*
ELIZABETH L. BROWN (La #42025)
Assistant Solicitor General

OFFICE OF THE LOUISIANA ATTORNEY GENERAL
1885 North Third Street
Baton Rouge, LA 70802
Telephone: (225) 406-1864
Facsimile: (225) 326-6795
BrownE@ag.louisiana.gov

Randal J. Robert (La #21840)
Connell L. Archey (La. #29992)
Keith J. Fernandez (La. #33124)
George A. Wright (La. #36095)
Evan D. Young (La. #41462)
BUTLER SNOW LLP
445 North Boulevard Suite 300
Baton Rouge, LA 70802
Telephone: (225) 325-8700
Randy.Robert@butlersnow.com
Connell.Archey@butlersnow.com
Keith.Fernandez@butlersnow.com
George.Wright@butlersnow.com
Evan.Young@butlersnow.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Elizabeth L. Brown*
ELIZABETH L. BROWN (La #42025)