**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| TODD WESSINGER,<br><br>PLAINTIFF,<br><br>v.<br><br>GARY WESTCOTT, in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections, et al.,<br><br>DEFENDANTS. | Civil Action No. 3:26-cv-957<br><br>Judge: JWD - SDJ |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

BACKGROUND ........ 1

STANDARD OF REVIEW ........ 4

ARGUMENT ........ 5

I. SOVEREIGN IMMUNITY BARS PLAINTIFF'S CLAIMS. ........ 5

A. Plaintiff Does Not and Cannot Allege a Willingness to Execute Him by the Two-Drug Series of Midazolam and Hydromorphone. ........ 6

B. Plaintiff Cannot Identify Any Compulsion or Constraint to Execute Him by Nitrogen Hypoxia. ........ 6

II. OTHER ARTICLE III PROBLEMS INDEPENDENTLY BAR THIS SUIT. ........ 9

A. Plaintiff Lacks Standing. ........ 10

B. If Plaintiff Declines Pentobarbital, This Case Is Barred as an Improper Second and Successive Habeas Petition. ........ 12

PRAYER FOR RELIEF ........ 14

CERTIFICATE OF SERVICE ........ 15

## TABLE OF AUTHORITIES

### Cases

*Attala Cnty., Miss. Branch of NAACP v. Evans*,
37 F.4th 1038 (5th Cir. 2022) ........ 10

*Bucklew v. Precythe*,
587 U.S. 119 (2019) ........ 2, 11, 13

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........ 10, 11

*Crone v. Cockrell*,
324 F.3d 833 (5th Cir. 2003) ........ 12

*Ex parte Young*,
209 U.S. 123 (1908) ........ 6

*Hill v. McDonough*,
547 U.S. 573 (2006) ........ 12

*In re FEMA Trailer*,
668 F.3d 281 (5th Cir. 2012) ........ 4

*League of Women Voters of La. v. Landry*,
No. 25-413, 2026 WL 2959966 (M.D. La. Oct. 1, 2026) ........ 5

*McLin v. Twenty-First Jud. Dist.*,
79 F.4th 411 (5th Cir. 2023) ........ 4

*Mi Familia Vota v. Ogg*,
105 F.4th 313 (5th Cir. 2024) ........ 5, 9

*Murthy v. Missouri*,
603 U.S. 43 (2024) ........ 10, 11

*Nance v. Ward*,
597 U.S. 159 (2022) ........ 12

*Paterson v. Weinberger*,
644 F.2d 521 (5th Cir. 1981) ........ 4, 5

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) ........ 5

*Sanders v. Univ. of Tex. Pan Am.*,
776 F. App'x 835 (5th Cir. 2019) .......... 8

*State ex rel. Wessinger v. Cain*,
2003-3097 (La. 9/3/04), 882 So. 2d 605 .......... 2

*State v. Wessinger*,
98-1234 (La. 5/28/99), 736 So. 2d 162 .......... 1, 2

*Tex. All. for Retired Ams. v. Scott*,
28 F.4th 669 (5th Cir. 2022) .......... 6

*Tex. Democratic Party v. Abbott*,
978 F.3d 168 (5th Cir. 2020) .......... 5

*Wessinger v. Vannoy*,
187 F.4th 339 (5th Cir. 2026) .......... 2

*Wessinger v. Vannoy*,
No. 04-637 (M.D. La. Oct. 13, 2026) .......... 12

*Williamson v. Tucker*,
645 F.2d 404 (5th Cir. 1981) .......... 5

*Zimmerman v. City of Austin*,
881 F.3d 378 (5th Cir. 2018) .......... 11

**Statutes**

28 U.S.C. § 2244 .......... 12

28 U.S.C. § 2254 .......... 12, 13, 14

La. R.S. 15:569 .......... 3

**Rules**

Fed. R. Civ. P. 12 .......... 4

## INTRODUCTION

Plaintiff Todd Wessinger is a convicted murderer—and he will soon be duly executed in Louisiana for his crimes. Anticipating as much, he has filed this method-of-execution challenge. He principally alleges that "Defendants intend to execute [him] by nitrogen hypoxia," ECF 28 (Am. Compl.) ¶ 13—so he challenges nitrogen hypoxia. He also challenges lethal injection via a two-drug series of midazolam and hydromorphone.

This Court lacks jurisdiction over both challenges. As Plaintiff's amended complaint appears to recognize, Louisiana has no means or intent to execute him with the two-drug series. And as the Secretary's Declarations explained, *see* Exs. 1, 2, Plaintiff will have the option to elect lethal injection via pentobarbital—the very "feasible and readily implemented alternative" that Plaintiff believes Louisiana must use. Am. Compl. ¶ 9; *see id.* ¶ 11 (alleging that "pentobarbital reliably renders a prisoner deeply unconscious before the respiratory and cardiovascular effects that cause death"). He will thus voluntarily choose pentobarbital (which ends this case), or else—contrary to his allegations—insist on nitrogen hypoxia (which likewise ends this case). Because sovereign immunity and other basic Article III principles foreclose this case regardless of what Plaintiff elects, the case must be dismissed.

## BACKGROUND

In 1995, Plaintiff decided to rob Calendar's Restaurant in Baton Rouge and to kill all witnesses. *State v. Wessinger*, 98-1234 (La. 5/28/99), 736 So. 2d 162, 169. Mike Armentor, a Calendar's employee, saw Plaintiff and greeted him. *Id.* Plaintiff returned that greeting by shooting Armentor twice in the back. *Id.* Armentor suffered

severe abdominal injuries but ultimately survived. *Id.* Next, Plaintiff tried to kill Alvin Ricks, another employee, placing his gun against Ricks's head and leg, but the gun misfired. *Id.* Stephanie Guzzardo, the manager on duty, "heard the commotion [from the office] and called 911." *Id.* "Before she could speak to the operator," Plaintiff entered the office. *Id.* The 911 call recorded what followed: Guzzardo pleaded for her life, telling Plaintiff she would not report him to the police. Plaintiff "t[old] her to 'shut up'" and "shot her through the heart." *Id.* Guzzardo died about thirty seconds later. *Id.* Plaintiff took about $7,000 from the office, spotted David Breakwell, another employee, hiding in a cooler and shot Breakwell as he begged for his life. *Id.* "Breakwell died en route to the hospital." *Id.*

Plaintiff was convicted two counts of first-degree murder for the heinous killing of Guzzardo and Breakwell and received two death sentences. *Id.* His convictions and death sentences withstood direct appeal, state postconviction review, and federal habeas review. *Id.* at 197; *State ex rel. Wessinger v. Cain*, 2003-3097 (La. 9/3/04), 882 So. 2d 605; *Wessinger v. Vannoy*, 187 F.4th 339 (5th Cir. 2026).

As is all too common in death penalty cases—even though the Supreme Court "has yet to hold that a State's method of execution qualifies as cruel and unusual," *Bucklew v. Precythe*, 587 U.S. 119, 133 (2019)—Plaintiff now tries again to forestall his execution through this challenge to two of Louisiana's methods of execution, Am. Compl. Like in his original complaint, Plaintiff contends that nitrogen hypoxia and lethal injection via the two-drug series of midazolam and hydromorphone constitute cruel and unusual punishment in violation of the Eighth Amendment. He identifies

lethal injection via pentobarbital as a purported alternative method "that would significantly reduce the substantial risk of severe harm" because it "reliably renders a prisoner deeply unconscious before the respiratory and cardiovascular effects that cause death." Am. Compl. ¶¶ 9, 11. Plaintiff's arguments hinge on two notions: (1) Pentobarbital is an available alternative method of execution that the State could implement against him and is significantly less painful than nitrogen hypoxia, *id.* ¶¶ 10–12, 14–15, and (2) regardless of pentobarbital's availability, the Secretary of Louisiana's Department of Public Safety and Corrections will choose nitrogen hypoxia as the method of execution instead, *id.* ¶ 13.

Only the Secretary, however, knows what he intends to do if and when a warrant of execution issues for Plaintiff—and the Secretary has executed a sworn declaration detailing those plans. Ex. 1 (Westcott Decl.). Louisiana law charges the Secretary with the responsibility of selecting the manner of execution. *Id.* ¶ 5 (citing La. R.S. 15:569(A)). The Secretary explains that, "[h]aving personally witnessed an execution via nitrogen hypoxia, I saw that it was humane, and in general, I will choose nitrogen hypoxia over lethal injection or electrocution." *Id.* ¶ 7. The Secretary acknowledges, however, that Plaintiff has claimed that "the Eighth Amendment prevents Louisiana from 'refusing to use the single-drug pentobarbital protocol,' as opposed to nitrogen hypoxia, to execute him." *Id.* (quoting ECF 1 (Compl.) ¶ 126); *accord* Am. Compl. ¶ 128 (making identical allegation). The Secretary believes Plaintiff's "factual and legal claims about nitrogen hypoxia are wrong." Westcott Decl. ¶ 7. "Nonetheless, in the interests of preventing further delays of justice—and given

Plaintiff's representations to this Court—[the Secretary] will choose pentobarbital if Plaintiff elects it." *Id.*

Accordingly, upon the Secretary's receipt of a warrant of execution for Plaintiff, he intends to direct a DPSC official or employee to present Plaintiff with a form (attached to the declaration) that will allow Plaintiff to elect lethal injection via pentobarbital as his method of execution. *Id.* ¶ 8. "If Plaintiff elects lethal injection via pentobarbital, lethal injection will be carried out using pentobarbital." *Id.* The Secretary has further documented the State's efforts to secure pentobarbital to execute Plaintiff in accordance with his wishes: "The State has secured a supplier for pentobarbital," "has placed a monetary deposit for 15 grams of pentobarbital to execute Plaintiff," and "will receive the pentobarbital within 48 hours of [its] request for pentobarbital—which the State will make if and when an execution warrant is issued for Plaintiff and Plaintiff elects to be executed by pentobarbital." Ex. 2 (Supp. Decl.) ¶ 6.

## STANDARD OF REVIEW

Rule 12(b)(1) permits a party to raise fatal jurisdictional defects early. *See* Fed. R. Civ. P. 12(b)(1); *see, e.g.*, *In re FEMA Trailer*, 668 F.3d 281, 286 (5th Cir. 2012) (citation omitted). When "a Rule 12(b)(1) motion is filed," "the court first considers its jurisdiction." *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023). A defendant may "make[] a 'factual attack' upon the court's subject matter jurisdiction over the lawsuit" by "submit[ting] affidavits, testimony, or other evidentiary materials." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Plaintiff, as "the party asserting jurisdiction," "constantly bears the burden of proof that

jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). In response to a factual attack, a plaintiff must "prov[e] by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson*, 644 F.2d at 523. "[N]o presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *League of Women Voters of La. v. Landry*, No. 25-413, 2026 WL 2959966, at *8 (M.D. La. Oct. 1, 2026) (deGravelles, J.) (alterations in original) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

## ARGUMENT

As the Secretary's Declaration notes, Plaintiff is wrong to say that execution via nitrogen hypoxia (or the two-drug series) violates the Eighth Amendment—whether compared to execution via pentobarbital or any other method. But that question is beyond this Court's jurisdiction, and so Defendants do not address it in this motion.

### I. SOVEREIGN IMMUNITY BARS PLAINTIFF'S CLAIMS.

Defendants are state officials sued in their official capacities and are therefore entitled to sovereign immunity unless Plaintiff can satisfy the *Ex parte Young* exception. *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020). *Ex parte Young* requires "an ongoing violation of federal law" brought against the proper defendants. *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024) (citation omitted). "To be a proper defendant under *Ex parte Young*, a state official 'must have some connection with the enforcement of' the law being challenged." *Id.* (quoting *Ex*

*parte Young*, 209 U.S. 123, 157 (1908)). Three guideposts drive this inquiry: The state official must (1) have "more than the general duty to see that the laws of the state are implemented," (2) have "a demonstrated willingness to exercise that duty," and (3) "compel or constrain persons to obey the challenged law." *Id.* (cleaned up) (quoting *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022)).

Plaintiff must rely on the narrow exception under *Ex parte Young* to pursue his claims. However, Plaintiff cannot satisfy its requirements as to either method of execution challenged here, so his claims must be dismissed.

### A. Plaintiff Does Not and Cannot Allege a Willingness to Execute Him by the Two-Drug Series of Midazolam and Hydromorphone.

Plaintiff's allegations foreclose any arguments that Defendants have a demonstrated willingness to use midazolam and hydromorphone: Plaintiff asserts that "Defendants intend to execute [him] by nitrogen hypoxia," not the two-drug series. Am. Compl. ¶ 13. Plaintiff moreover acknowledges that "[n]o state has carried out an execution using midazolam and hydromorphone since … 2014." *Id.* ¶¶ 107, 148. Nor does Plaintiff even allege that Defendants have, or could access, those drugs for use in execution. *See generally id.* Given his own allegations, Plaintiff has failed to carry his burden to prove any demonstrated willingness to use that lethal injection protocol against him. His challenge to the two-drug series therefore must be dismissed based on sovereign immunity.

### B. Plaintiff Cannot Identify Any Compulsion or Constraint to Execute Him by Nitrogen Hypoxia.

Plaintiff's challenge to nitrogen hypoxia fares no better. Plaintiff alleges that "Defendants intend to execute [him] by nitrogen hypoxia." *Id.* ¶ 13. The Secretary

agrees that, "[h]aving personally witnessed an execution via nitrogen hypoxia, I saw that it was humane, and in general, I will choose nitrogen hypoxia over lethal injection or electrocution." Westcott Decl. ¶ 7. If Plaintiff were to be executed by nitrogen hypoxia, however, that would be *solely* a product of his voluntary decision not to be executed by pentobarbital—a "feasible and readily implemented alternative" that he claims "reliably renders a prisoner deeply unconscious before the respiratory and cardiovascular effects that cause death." Am. Compl. ¶¶ 9, 11; *see* Westcott Decl. ¶ 8 ("If Plaintiff elects lethal injection via pentobarbital, lethal injection will be carried out using pentobarbital."). In other words, Plaintiff can maintain this nitrogen hypoxia challenge against Defendants only on the assumption that *Plaintiff will voluntarily elect to be executed by nitrogen hypoxia*. That assumption is factually foreclosed—and it legally ends this case.

1. It is factually foreclosed because Plaintiff has pleaded the exact opposite. The thrust of his complaint is that the Eighth Amendment prevents Louisiana from choosing nitrogen hypoxia over lethal injection via pentobarbital. *See* Am. Compl. at 3, 4, 27, 29, 30, 31, 32, 33, 34, 35, 37, 38. By Plaintiff's telling, nitrogen hypoxia is "conscious" "torture," *id.* ¶ 71, whereas pentobarbital "reliably renders a prisoner deeply unconscious before the respiratory and cardiovascular effects that cause death," *id.* ¶ 11. Pentobarbital, says Plaintiff, "avoids ... suffering." *Id.* ¶ 125. "It renders the prisoner unconscious before the respiratory and cardiovascular depression that causes death, rather than causing unconsciousness through the deprivation of oxygen itself." *Id.* And "pentobarbital reliably produces a deep,

comalike unconsciousness from shortly after injection until the moment of death." *Id.* ¶ 126. All of that is why Plaintiff says Louisiana would violate the Eighth Amendment by choosing nitrogen hypoxia over pentobarbital.

Louisiana disagrees with Plaintiff's attacks on nitrogen hypoxia—but there can be no doubt about Plaintiff's position: If given the choice, Plaintiff would choose pentobarbital over nitrogen hypoxia. There also can be no doubt about whether Plaintiff will have that choice: "If Plaintiff elects lethal injection via pentobarbital, lethal injection will be carried out using pentobarbital." Westcott Decl. ¶ 8; *accord* Supp. Decl. ¶ 6 (explaining the State's access to pentobarbital). And despite knowing that he will have the ability to elect pentobarbital, *see* ECF 19-2, Plaintiff never alleges that he will not choose pentobarbital when given that choice, *see generally* Am. Compl. As a purely factual matter, therefore, Plaintiff's own allegations foreclose the assumption that he will voluntarily elect to be executed by nitrogen hypoxia.[1]

2. Sovereign immunity also forecloses that assumption (and this suit) as a legal matter. That is because a core premise of the *Ex parte Young* exception, where it applies, is that the sued official will compel or constrain the challenged conduct

[1] Though Plaintiff requests certain "safeguards" for a pentobarbital execution, Am. Compl. ¶ 112, he still maintains that "DPSC *has already adopted procedures* governing execution by single-drug pentobarbital" that "would significantly reduce the substantial risk of severe pain and serious harm presented by nitrogen hypoxia," *id.* ¶ 128 (emphasis added). He also pleads that "[u]se of DPSC's *current single-drug pentobarbital protocol* would significantly reduce the risk posed by both nitrogen hypoxia and the two-drug midazolam-and-hydromorphone series." Compl. ¶ 11 (emphasis added); *Sanders v. Univ. of Tex. Pan Am.*, 776 F. App'x 835, 838 (5th Cir. 2019) (unpub.) (noting "[a]dmissions in superseded pleadings …. retain value 'as evidentiary admissions'" (citation omitted). There is therefore no dispute that Plaintiff will elect pentobarbital. Moreover, he does not allege he would choose nitrogen hypoxia over pentobarbital absent fulfillment of his new requests; he does not tie his requests to any particular purported risk of cruel and unusual punishment; he does not disclose that many of them are *already* embedded in the existing protocol (on which his amended complaint relies); and he does not challenge the current pentobarbital protocol itself as a violation of the Eighth Amendment.

absent an injunction—here, the use of nitrogen hypoxia to execute Plaintiff. *See Mi Familia Vota*, 105 F.4th at 325. But that premise is not satisfied here: If Plaintiff wishes not to be executed by nitrogen hypoxia, he is free to decline nitrogen hypoxia by selecting his requested alternative—pentobarbital. The Secretary "will choose pentobarbital if Plaintiff elects it." Westcott Decl. ¶ 7. Or, put otherwise, the Secretary will not compel the use of nitrogen hypoxia if Plaintiff elects pentobarbital.

The only way Plaintiff will be executed by nitrogen hypoxia is if he voluntarily declines to elect pentobarbital and thus voluntarily agrees to be executed by nitrogen hypoxia. But the complaint factually forecloses that scenario, *see supra* Section I.B(1), and in all events, that scenario would destroy any suggestion that the Secretary "compelled" Plaintiff's voluntary decision to be executed by nitrogen hypoxia.[2] That decision would be Plaintiff's alone. His own free choice to subject himself to the claimed injuries from nitrogen hypoxia—while rejecting his requested alternative—cannot be characterized as Defendants compelling or constraining him. Thus, sovereign immunity unquestionably bars this suit.

## II. Other Article III Problems Independently Bar This Suit.

Even if Plaintiff could overcome sovereign immunity, basic standing and habeas principles would bar this suit.

[2] The same point is true when framed in terms of *Ex parte Young*'s second prong: That the Secretary will not execute Plaintiff with nitrogen hypoxia if Plaintiff elects to be executed by his preferred alternative, pentobarbital, "sufficiently negates the charge of a demonstrated willingness to enforce" that method of execution. *Mi Familia Vota*, 105 F.4th at 331.

### A. Plaintiff Lacks Standing.

To satisfy Article III, a plaintiff must allege (1) "an injury that is 'concrete, particularized, and actual or imminent'"; (2) that is "fairly traceable to the challenged action"; and (3) that is "redressable by a favorable ruling." *Attala Cnty., Miss. Branch of NAACP v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) (citation omitted). Since Plaintiff seeks prospective relief based on a purported future injury, he "must establish a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them," meaning he must plausibly allege "that the defendants' alleged wrongful behavior would *likely* occur or continue." *Murthy v. Missouri*, 603 U.S. 43, 69 (2024) (cleaned up). A "speculative chain of possibilities does not establish that injury based on potential future [actions] is certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). Here, Plaintiff faces two obvious problems.

*First*, as explained in the prior Section, by Plaintiff's own allegations it is implausible to believe that Plaintiff faces any risk of execution via nitrogen hypoxia (and certainly not the two-drug series). The Secretary has explained that, "[i]f Plaintiff elects lethal injection via pentobarbital, lethal injection will be carried out using pentobarbital," Westcott Decl. ¶ 8—the precise alternative that Plaintiff criticizes Louisiana "for refusing" to use. Am. Compl. ¶¶ 128, 133, 143, 151. Thus, the challenged two-drug series will not be used—and the only possibility of nitrogen hypoxia being used hinges on the utterly implausible idea that Plaintiff would elect

that method, which he claims to be the equivalent of torture. *See id.* ¶¶ 71–72. That is nowhere close to a concrete, imminent injury-in-fact.

*Second*, Plaintiff faces no Article III injury *regardless* of what method he elects. If Plaintiff wishes to be executed with pentobarbital, then that ends this case—because his intent to elect pentobarbital means that he faces no concrete and imminent harm from either of the two methods of execution challenged in his complaint: nitrogen hypoxia and the two-drug series. *See* Westcott Decl. ¶ 8 ("If Plaintiff elects lethal injection via pentobarbital, lethal injection will be carried out using pentobarbital."). And, if (contrary to his allegations) Plaintiff wished to be executed with nitrogen hypoxia, that too would end this case. A plaintiff "cannot manufacture standing merely by inflicting harm on [himself]." *Murthy*, 603 U.S. at 73 (quoting *Clapper*, 568 U.S. at 416); *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018). Because Plaintiff faces execution by nitrogen hypoxia only if he declines "to elect lethal injection via pentobarbital," Westcott Decl. ¶ 8, Plaintiff will face his alleged harms from nitrogen hypoxia only if he chooses to inflict them upon himself. That self-inflicted injury is not cognizable under Article III, so Plaintiff's claims must be dismissed for lack of standing.

To be sure, it is possible that, someday in the future, continued pressure from anti-death penalty forces could succeed in once again preventing Louisiana from carrying out executions via lethal injection. *Cf., e.g.*, *Bucklew*, 587 U.S. at 125 (noting that "pressure from anti-death-penalty advocates" has resulted in some states' inability to carry out lethal injections). At that time, nitrogen hypoxia may be the

only feasible method of execution—and Louisiana will so notify the courts if that happens. But today is not that day. Supp. Decl. ¶ 6. Once a warrant for his execution is issued, Plaintiff will receive an option—an option he does not deserve, but one that squarely eliminates any claim of Article III standing.

### B. If Plaintiff Declines Pentobarbital, This Case Is Barred as an Improper Second and Successive Habeas Petition.

Underscoring Plaintiff's standing problem is another jurisdictional bar: Plaintiff cannot decline pentobarbital because doing so would transform this case into a successive federal habeas petition that is plainly foreclosed. As this Court knows, Plaintiff has already fully litigated a federal habeas petition under 28 U.S.C. § 2254. *See* Judgment, *Wessinger v. Vannoy*, No. 04-637 (M.D. La. Oct. 13, 2026), ECF 322. He thus cannot bring a second or successive petition without first obtaining approval from the Fifth Circuit, 28 U.S.C. § 2244(b)(3), which he has not done. And this Court lacks jurisdiction over this complaint if it is an improper second or successive petition. *Crone v. Cockrell*, 324 F.3d 833, 836 (5th Cir. 2003).

This complaint is an improper second or successive petition if Plaintiff—contrary to his allegations—intends to decline pentobarbital. This Court must "recharacteriz[e]" Plaintiff's "complaint as an action for habeas corpus" "[i]f the relief sought would foreclose execution." *Hill v. McDonough*, 547 U.S. 573, 582 (2006). To avoid this fate, the complaint "must make the case that the State really can put [Plaintiff] to death, though in a different way than it plans." *Nance v. Ward*, 597 U.S. 159, 169 (2022). But Plaintiff's challenge cannot satisfy these parameters. Plaintiff's proposed "different way" to be put to death is via pentobarbital. Am. Compl. ¶ 9. The

declaration makes clear that the State will execute him using that method if he so chooses. Westcott Decl. ¶¶ 7, 8. The only way that Plaintiff does not obtain his desired method of execution is if he refuses to make that election.

And that is the rub: Plaintiff cannot refuse his preferred alternative (pentobarbital) in order to subject himself to the challenged method (nitrogen hypoxia) while claiming he is merely challenging his method of execution. The only legitimate reason a death row inmate may challenge his method of execution through § 1983 rather than § 2254 is a professed "interest[] in avoiding unnecessary pain," not merely "delaying his execution." *Bucklew*, 587 U.S. at 140. That is why the prisoner must challenge "the State's proposed method" by "compar[ing] that method with a viable alternative" that "the State refused to adopt." *Id.* at 136, 140 (citation omitted). But, here, the State has not "refused to adopt" Plaintiff's alternative—to the contrary, it has ensured that Plaintiff may choose his proposed alternative.

Plaintiff nevertheless attempts to keep this lawsuit alive first through baseless innuendo that pentobarbital might not actually be available, ECF 26 at 15; *contra* Compl. at 29 (paragraphs under the heading "Single-Drug Pentobarbital Is a Feasible and Readily Implemented Alternative"); Am. Compl. at 29 (same); Supp. Decl. ¶ 6 (confirming the State's procurement of 15 grams of pentobarbital to execute Plaintiff), and now through an apparent indirect, collateral attack on a protocol he already deemed sufficient to "significantly reduce the substantial risk of severe pain and serious harm" purportedly motivating this litigation, Am. Compl. ¶ 128; *accord* Compl. ¶¶ 9, 10, 11, 12, 14, 99, 107, 108, 109, 110, 111, 120, 121, 122, 123, 124, 125,

126, 137, 138, 139, 140, 141, 147, 148, 149. That gamesmanship confirms the true nature of this lawsuit: to prevent his execution. That is a § 2254 claim, not a § 1983 claim, and this Court has no jurisdiction.

**PRAYER FOR RELIEF**

Defendants respectfully request this Court grant their motion to dismiss the amended complaint.

Dated: November 5, 2026

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General

*/s/ Elizabeth L. Brown*
ELIZABETH L. BROWN (La #42025)
Assistant Solicitor General
OFFICE OF THE LOUISIANA ATTORNEY GENERAL
1885 North Third Street
Baton Rouge, LA 70802
Telephone: (225) 406-1864
Facsimile: (225) 326-6795
BrownE@ag.louisiana.gov

Randal J. Robert (La #21840)
Connell L. Archey (La. #29992)
Keith J. Fernandez (La. #33124)
George A. Wright (La. #36095)
Evan D. Young (La. #41462)
BUTLER SNOW LLP
445 North Boulevard Suite 300
Baton Rouge, LA 70802
Telephone: (225) 325-8700
Randy.Robert@butlersnow.com
Connell.Archey@butlersnow.com
Keith.Fernandez@butlersnow.com
George.Wright@butlersnow.com
Evan.Young@butlersnow.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Elizabeth L. Brown*
ELIZABETH L. BROWN (La #42025)