**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TODD WESSINGER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-957-JWD-SDJ** |
| **GARY WESTCOTT, et al.** | |

---

# ORDER DENYING MOTION TO DISMISS

---

Currently before the Court is a Motion to Dismiss (Doc. 30) filed by the State Defendants: Gary Westcott, Secretary of the Louisiana Department of Public Safety and Corrections (DPSC); Seth Smith, DPSC's Chief of Operations; and Darrel Vannoy, Warden of the Louisiana State Penitentiary at Angola (Angola). For the reasons outlined below, the Court must **deny** the Motion. (Doc. 30).

Wessinger is a death row inmate at Angola whose execution, based on recent statements by the Governor and District Attorney, appears imminent.[1] On September 4, 2026, Wessinger sued the named Defendants in this federal court, seeking injunctive relief for violations of the Eighth Amendment made actionable by 42 U.S.C. § 1983. He challenges two of the execution methods authorized by Louisiana law as cruel and unusual punishment—nitrogen hypoxia and the 2-drug

[1] *See* DA Hillar Moore intends to sign death warrant for convicted killer Todd Wessinger after failed appeal (WBRZ, published Oct. 6, 2026) (Available at: https://www.wbrz.com/news/da-hillar-moore-intends-to-sign-death-warrant-for-convicted-killer-todd-wessinger-after-failed-appeal/) (last visited: Nov. 14, 2026); Louisiana governor, judge reject Todd Wessinger's requests to reconsider death penalty (NOLA.com, published Oct. 14, 2026) (Available at: https://www.nola.com/news/courts/louisiana-governor-judge-reject-todd-wessinger-s-requests-to-reconsider-death-penalty/article_f784ca24-468d-5b78-a6d9-c5f2b93c2e48.html) (last visited: Nov. 14, 2026).

lethal injection protocol (Doc. 28). *See* La. Rev. Stat. § 15:569(A); DPSC Department Regulation No. OP-D-8 (amended Oct. 27, 2026) (Execution Protocol).[2]

Wessinger sues Secretary Westcott, COO Smith and Warden Vannoy in their official capacities to enjoin the State from executing him by either nitrogen hypoxia or the 2-drug (midazolam and hydromorphone) lethal injection protocol. He alleges both methods constitute cruel and unusual punishment in violation of the Eighth Amendment.

Also relevant, any inmate challenging a state's method of execution must "identify" a safer and readily implemented alternative method. *See Nance v. Ward*, 597 U.S. 159, 164 (2022) (this "comparative exercise" is a necessary element of an Eight Amendment claim). Here, Wessinger has identified an alternative, as required: a lethal injection of pentobarbital administered under the appropriate safeguards, outlined in paragraph 112 of the Amended Complaint. (Doc. 28). Louisiana's Execution Protocol includes lethal injection by pentobarbital but, allegedly, only provides for "some" of the additional safeguards identified in paragraph 112 of the Amended Complaint. (Doc. 28 at ¶ 111).[3]

---

[2] An Amended Complaint was later filed on October 28, 2026, with minimal changes:

- The Amendment advises that DPSC revised its Execution Protocol on October 27, 2026 (Doc. 28 at ¶ 3).
- It now identifies "appropriate safeguards" under which the alleged alternative method—lethal injection by pentobarbital—must be administered to ensure safety. (Doc. 28 at ¶ 112); and
- It clarifies that DPSC's Execution Protocol has only adopted "some" of the appropriate safeguards identified in paragraph No. 112 "to carry out an execution using single-drug pentobarbital." (Doc. 28 at ¶ 111).

[3] "Since January 1, 2015, more than half of all executions in the United States have been carried out using single-drug pentobarbital." (Doc. 28 at 31). Yet despite lethal injection being authorized by Louisiana since 1991, *see Hoffman v. Jindal*, No. 12-cv-796-JJB, 2013 WL 1637244, at *1 (M.D. La. Apr. 16, 2013) ("In 1991, Louisiana adopted lethal injection as its method of execution."), the necessary drugs have become increasingly hard to obtain. *See Glossip v. Gross*, 576 U.S. 863, 871 (2015) (States began transitioning to pentobarbital for lethal injection in 2010. "Before long, however, pentobarbital also became unavailable."). When the State could no longer access the drugs used in its earlier 3-drug protocol, it was "revised" in 2013 "to provide for a single dose" of pentobarbital, "which has since become the mostly widely used method of execution in the country." Affidavit of DPSC Sec'y LeBlanc at ¶ 6, *Hoffman v. Jindal*,

Critically, neither side has disputed that Wessinger brings his Eighth Amendment claim against the named Defendants in their official capacities and seeks prospective relief. Nonetheless, the State Defendants move to dismiss Wessinger's constitutional challenge for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**Motion to Dismiss.** In its Motion to Dismiss, the State Defendants offer three reasons for this Court's alleged lack of subject matter jurisdiction, suggesting:

(1) Wessinger's official capacity claims against the State Defendants are barred by sovereign immunity, and the Ex parte Young exception does not apply;

(2) Wessinger lacks standing, as it is unlikely the challenged conduct will occur;

(3) Wessinger's true aim is avoiding execution altogether, and so this civil action should be construed as a successive habeas petition. (Doc. 30).[4]

**Westcott's Declaration.** These arguments are based entirely on the October 16th and October 28th Declarations of Gary Westcott, the Secretary of DPSC. On October 16th, Westcott affirmatively declared that under Louisiana law he is solely responsible for selecting an inmate's method of execution. (Doc. 30-2 at 2) ("Therefore, I will be responsible for selecting the manner of execution for Plaintiff Todd Wessinger."). There are three authorized methods in Louisiana—lethal injection, nitrogen hypoxia, and electrocution. And Westcott "will choose nitrogen hypoxia over lethal injection and electrocution." (Doc. 30-2 at 3). But because Wessinger's Complaint identifies pentobarbital as a safer alternative, Westcott will now take the novel approach of allowing Wessinger—the condemned inmate—to elect lethal injection by pentobarbital. (Doc. 30-

---

No. 12-cv-796-SDD-EWD (M.D. La. filed Aug. 12, 2021), ECF No. 263-2. But Louisiana's supply of pentobarbital expired in "the fall of 2013 before it could be utilized for any executions." *Id.* at ¶ 7. For that reason, Louisiana has never carried out an execution using pentobarbital. The protocol was again revised in 2014 and, as of late 2021, it "continue[d] to provide for a single dose of pentobarbital or, if that drug is not available, a combination of midazolam and hydromorphone." *Id.* at ¶ 9. Because of ongoing difficulties in procuring both pentobarbital and hydromorphone, neither the single-drug nor two-drug protocol has ever been implemented. *Id.* at ¶ 10.

[4] The State Defendants also filed a Reply Memorandum (Doc. 32) that largely reiterates the arguments made in their Motion to Dismiss.

2). And, if Wessinger makes the election, Westcott will then choose pentobarbital as the execution method. (Doc. 30-2).

**Status Conference.** On October 21, 2026, the Court held a Status Conference, during which it questioned the binding nature of the Declaration and the State's possession of or ability to obtain pentobarbital. The Court raised the latter question because, to our knowledge, the State's supply of pentobarbital expired in 2013; and since then, it has consistently claimed an inability to procure the drug for use in executions.[5] Counsel responded, confirming the State does not currently have a supply of pentobarbital, and counsel had no knowledge concerning the State's ability to procure the drug. Concerning Westcott's Declaration, counsel gave a qualified response: The Declaration is binding if the State has pentobarbital. (Doc. 24).

**Westcott's Supplemental Declaration.** Following the Conference, Westcott signed a supplemental Declaration on October 28, 2026, declaring the State has "secured a supplier for pentobarbital" and "placed a monetary deposit for 15 grams of pentobarbital to execute Plaintiff" which can be "receive[d]" within "48 hours of the State's request." (Doc. 30-3).

**Wessinger's Response.** Wessinger opposes the Motion to Dismiss and the suggested impact of Secretary Westcott's Declaration, suggesting it has no binding effect and runs counter to Louisiana law. Ultimately, Wessinger argues that the State Defendants are truly raising a mootness

---

[5] In 2022, DPSC Secretary Leblanc provided an affidavit in another case challenging Louisiana's execution protocol. In that Affidavit, the Secretary of DPSC testified that "DPSC's stock of pentobarbital expired in the fall of 2013 before it could be utilized for any executions. . . . To this date, DPSC remains unable to procure either pentobarbital or hydromorphone." DPSC Sec'y Affidavit, *Hoffman v. Jindal*, No. 12-cv-796 (M.D. La. 2022), ECF No. 263-2. The State made the same claim—that it is unable to access lethal injection drugs, including pentobarbital—as recently as 2025. *See Hoffman v. Westcott*, No. 25-cv-169-SDD-SDJ, 2025 WL 763945, at *2 (M.D. La. Mar. 11, 2025) (noting "years of being unable to conduct executions through lethal injection"); *see also Hoffman v. Jindal*, No. 12-796-SDD-EWD, 2022 WL 969050, at *10, *12 (M.D. La. Mar. 30, 2022) ("The uncontroverted testimony in this matter has established that Louisiana is unable to obtain execution drugs from compounding pharmacies or FDA-approved pharmaceutical companies. . . . Secretary LeBlanc's sworn deposition testimony and affidavit effectively announces that it is the policy of the Department of Public Safety and Corrections to no longer attempt to obtain execution drugs."); *Hoffman v. Jindal*, No. 12-cv-796-SDD-EWD, 2022 WL 969050, at *8 (M.D. La. Mar. 30, 2022) ("The depositions in this matter revealed that Attorney General Landry's press release misrepresented DOC's supply and access to lethal injection drugs. DOC does not have access to pentobarbital.").

argument dressed up as a challenge to sovereign immunity and standing. As will be explained later, the Court agrees. Responding more specifically to their arguments, Wessinger contends:

(1) The named officials meet Ex parte Young's exception to sovereign immunity, as they are directly charged with carrying out executions in Louisiana. The Defendants possess the requisite authority over the challenged execution methods, and Westcott's Declaration does not interrupt the nexus between their legal responsibilities and the challenged execution methods.

(2) Wessinger faces a substantial risk of imminent injury—execution by one of the challenged methods—and that injury is directly traceable to the named Defendants. Westcott's novel "election procedure" announced in his post-filing Declaration does not strip Wessinger of standing.

(3) Wessinger's allegations make clear this is not an attempt to prevent his execution entirely, but to prohibit the State from executing him in a way that constitutes cruel and unusual punishment—a claim cognizable under the Eighth Amendment (and made actionable by 42 U.S.C. § 1983). (Doc. 31).

## II. LEGAL STANDARD

A responding party may raise lack of subject matter jurisdiction as a defense through a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure. "A claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). And so, a plaintiff generally "bears the burden of proof that jurisdiction does in fact exist." *Id.* But dismissal is warranted "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief."[6] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

---

[6] Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial attacks" and "factual attacks." *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings." *Harmouche v. Consulate Gen. of State of Qatar*, 313 F. Supp. 3d 815, 819 (S.D. Tex. 2018). In considering a "facial

## III. DISCUSSION

"Federal courts may analyze arguments that question our jurisdiction in any order." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393 (5th Cir. 2015). The Court therefore begins with the State Defendants' assertion of sovereign immunity before turning to the remaining arguments, all of which concern this Court's subject matter jurisdiction. As explained below, sovereign immunity does not bar Wessinger's Eighth Amendment claim—a claim that was justiciable upon filing and remains justiciable today.

### A. Sovereign Immunity

"[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Article III." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *see also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 333 n.8 (5th Cir. 2002) (noting that state sovereign immunity "bears on [the] court's subject-matter jurisdiction"). "Generally, sovereign immunity bars private suits against nonconsenting states in federal court." *Book People, Inc. v. Wong*, 91 F.4th 318, 334 (5th Cir. 2024). "And where a suit is effectively against the state, state officials enjoy the same sovereign immunity that would be afforded the state." *Hope v. Harris*, 861 F. App'x 571, 578 (5th Cir. 2021); *see also Book People*, 91 F.4th at 318 ("This bar also applies

---

attack," the court "is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Paterson*, 644 F.2d at 523. On the other hand, "[a] factual attack challenges the existence of subject matter jurisdiction in fact . . . and matters outside the pleadings—such as testimony and affidavits—may be considered." *Harmouche*, 313 F. Supp. 3d at 819.

Here, the State Defendants have submitted Secretary Westcott's Declarations along with its Motion to Dismiss. (Docs. 30-2 and 30-3). It does not submit any evidence, or even raise any arguments, concerning the remaining Defendants—COO Smith and Warden Vannoy. Nonetheless, based on Westcott's Declaration, the State Defendants contend they have raised a purely factual challenge to subject matter jurisdiction—one that Wessinger has not overcome with evidence. (Doc. 30-1 at 8-9); (Doc. 32 at 10). However, Westcott's Declaration serves to corroborate his statutorily proscribed duties. Otherwise, as the Court will explain, it does not create a dispute as to any fact that would warrant a finding that the Court lacks jurisdiction. *See Matrajt v. United States Prob. Off. for W. Dist. of Pennsylvania*, No. 20-CV-1660, 2021 WL 4264883, at *6 (W.D. Pa. Sept. 20, 2021) ("They have attached to their motion to dismiss Gray's Declaration, in which he explains, in relevant part, the official duties of individual defendants, which does not appear to conflict with the Amended Complaint's assertion of those duties. A factual challenge to the Court's subject matter jurisdiction requires a factual dispute, and there does not appear to be one here. Consequently, the Court views Defendants' sovereign immunity argument as raising a facial challenge.").

to suits like this one against state officials or agencies that are effectively suits against a state."). But relevant here, the legal fiction of *Ex parte Young* allows a plaintiff to name "an officer of the state [as] a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional." *Ex parte Young*, 209 U.S. 123, 157. (1908); *see also Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 516 (5th Cir. 2017) ("a federal court does not violate state sovereignty when it orders a state official to do nothing more than uphold federal law under the Supremacy Clause."); *see also* Charles Alan Wright & Mary Kay Kane, *Law of Federal Courts* 14 (6th ed. 2002) (*Ex parte Young* is "indispensable to the establishment of constitutional government and the rule of law.").

A court considering the exception "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002).[7]

Here, the State does not challenge that Wessinger meets these general requirements, and for good reason—he brings official capacity claims against state officials to enjoin them from carrying out his death sentence in ways that allegedly violate the Eighth Amendment. (Doc. 28).[8]

---

[7] Stated differently, *Ex parte Young* requires a plaintiff to satisfy three criteria:

(1) name individual state officials in their official capacities;
(2) allege an ongoing violation of federal law; and
(3) seek relief properly characterized as prospective.

*See Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020) (en banc).

[8] Wessinger has sued Westcott, Smith and Vannoy in their official capacities as Secretary of DPSC (Westcott), DPSC's Chief of Operations (Smith), and Warden of Angola (Vannoy). He claims the State plans to execute him and that both its nitrogen hypoxia and 2-drug lethal injection protocols constitute cruel and unusual punishment. To avoid an unnecessarily painful death, Wessinger seeks "injunctive relief forbidding Defendants . . . from executing him by administering either nitrogen asphyxiation or lethal injection using the drugs midazolam and hydromorphone"—two of the methods "authorized" by state statute, La. Rev. Stat. § 15:569(A), and DPSC's Department Regulation No. OP-D-8 (Execution Protocol). (Doc. 28 at 1).

Instead, the State Defendants dispute whether the named officials are proper Defendants.[9] Because even when the elements of *Ex parte Young* are met, the proper defendant must still be named.

A proper defendant, for purposes of *Ex parte Young*, is a state official (or officials) with sufficient *connection to enforcement* of the challenged law.[10] *White Hat v. Murrill*, 141 F.4th 590, 600 (5th Cir. 2025). The Fifth Circuit has "defined 'enforcement' as 'typically involv[ing] compulsion or constraint." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 332 (5th Cir. 2024). But admittedly, "[w]hat constitutes a sufficient connection to the enforcement is [often] not clear from

---

[9] But if not any of these Defendants, then who? To be clear, the Court is not suggesting any requirement that a state official claiming immunity identify a better alternative—i.e., someone else with more enforcement authority. *Accord Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*, 255 F. Supp. 3d 1064, 1083 (D. Colo. 2017) (finding the named official did not have sufficient connection to enforcement, but also nothing that someone else did and that "Court expects the University's cooperation with any request from Plaintiff to identify the appropriate University official"). But there cannot reasonably be a circumstance where a death row inmate finds themself unable to challenge a state's method of execution as cruel and unusual punishment simply because there is no state official with sufficient enforcement authority. Logically, at least one actual person must have the legal authority to enforce an execution. The State of Louisiana, however, seems to suggest the logical choices are all immune from suit.

[10] The State Defendants only raise arguments specific to Secretary Westcott. Nonetheless, it is clear based on the relevant Revised Statutes, the challenged Protocol, and the allegations raised in the Complaint, that both Warden Vannoy and Chief Smith are properly named Defendants with a sufficient connection to enforcement of Louisiana's execution statute and protocol. The warden of Angola—Defendant Vannoy—"shall," by statute, attend the execution, summon a physician to be present, and "select[]" a "competent person" to "carry out the authorized method of execution" chosen by the Secretary. La. Rev. Stat. § 15:570(A). Warden Vannoy "shall" also make, sign and file with the appropriate state court, a "process verbal" attesting to the execution, including its manner and date. La. Rev. Stat. § 15:571. (continued)

DPSC's Execution Protocol tasks the Warden Vannoy with training execution staff and overseeing the execution. *See Hoffman v. Jindal*, No. 12-cv-796-JJB, 2013 WL 1637244, at *7 (M.D. La. Apr. 16, 2013) (Because death-row inmates challenged Louisiana's lethal injection protocol as cruel and unusual punishment, and the Warden of Angola was "charged with overseeing the execution," the Warden was a proper defendant under Ex Parte Young.); *Chester v. Beard*, 657 F. Supp. 2d 534, 545 (M.D. Pa. 2009) ("as Superintendent of the prison where executions . . . take place, Defendant Tennis is properly named because he will oversee Plaintiffs' executions at SCI–Rockview. Indeed, Plaintiffs alleged . . . that Defendant Tennis 'will supervise Plaintiffs' executions.' As Plaintiffs challenge the Commonwealth's death-penalty protocol and specifically seek to enjoin the Commonwealth from executing them pursuant to such protocol, the Court finds that Plaintiffs have properly named Defendant Tennis as a party in this suit and Defendant's motion to dismiss him for lack of personal involvement will be denied.").

The Protocol itself, according to the Complaint, was directly developed by Defendant Smith, DPSC's Chief of Operations, who "was specifically tasked with DPSC's implementation of nitrogen hypoxia as a method of execution." (Doc. 28 at 7). According to prior testimony recited in the Complaint, Smith has stated that "DPSC's implementation of nitrogen hypoxia 'falls under his umbrella'" and he "continues to exercise supervisory authority over DPSC's implementation of its execution procedures, including . . . efforts to obtain drugs for use in lethal injection." (Doc. 28 at 7). *See Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) ("[A] sufficient connection certainly exists when there exists a special relationship between the state actor and the challenged provision.").

[our Circuit's] jurisprudence." *City of Austin v. Paxton*, 943 F.3d 993, 998–1002 (5th Cir. 2019) (quotation omitted). Some additional "guideposts" therefore "have emerged" to aid in more difficult cases. *Texas All. for Retired Americans v. Scott*, 28 F.4th 669, 672–74 (5th Cir. 2022). For example, the state official must have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty."[11] *Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (quotation omitted).

**Sufficient Connection to Enforcement.** While our Circuit has "struggled to define" *Ex parte Young*'s "'connection' requirement" in certain contexts, *Lewis v. Scott*, 28 F.4th 659, 663 (5th Cir. 2022),[12] it has not struggled in cases like the one currently pending before this Court. Indeed, "generally all institutional litigation involving state prisons" proceeds "in the federal courts under the fiction of *Ex parte Young*." *Brennan v. Stewart*, 834 F.2d 1248, 1252 n.6 (5th Cir. 1988); *see also Escobarrivera v. Whitaker*, No. 21-30147, 2022 WL 17352178, at *6 (5th Cir. Dec. 1, 2022) ("Generally all institutional litigation involving state prisons, such as this case, is brought under the *Ex parte Young* exception."); *Valentine v. Collier*, 993 F.3d 270 (5th Cir. 2021) (defendants, prison warden and executive director of Texas Department of Criminal Justice, were proper defendants under Ex parte Young exception, in 8th Amendment challenge to prison's COVID-19 policies); *Washington v. McLane*, No. 23-50235, 2025 WL 400030, at *3 (5th Cir. Feb. 5, 2025) ("suit against McLane and Marsh is analogous to suits against wardens of prisons, which have long been deemed acceptable under *Ex parte Young*."). "In fact, the exception is so well established

[11] The State Defendants incorrectly treat the Fifth Circuit's enforcement guideposts as if they are the required elements of *Ex parte Young*. (Doc. 30-1 at 13 & n.2). They are not. Instead, they are intended to guide lower courts where the connection to enforcement is unclear.

[12] *See also Healthy Vision Assoc. v. Abbott*, 138 F.4th 385, 396 (5th Cir. 2025) ("[O]ur decisions are not a model of clarity on what constitutes a sufficient connection to enforcement."); *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024) (same); *Tex. All. for Retired Ams.* 28 F.4th at 672 ("How much of a 'connection' has been hard to pin down, though."); *Tex. Democratic Party*, 978 F.3d at 179 ("This circuit has not spoken with conviction about all relevant details of the 'connection' requirement.").

in [this] context that such cases often do not even mention *Ex parte Young*." *Hope v. Harris*, 861 F. App'x at 578.

To be sure, prison officials are not precluded from asserting sovereign immunity. But when they have claimed that immunity bars an inmate from challenging a state's method of execution or execution protocols, courts have found that claim bears "no merit under *Ex parte Young*, 209 U.S. 123 (1908) and its progeny." *See Hoffman v. Jindal*, No. 12-cv-796-JJB, 2013 WL 1637244, at *8 (M.D. La. Apr. 16, 2013) ("Defendants further argue that this action is barred by the Eleventh Amendment and this Court lacks jurisdiction to hear this dispute. However, this argument has no merit under *Ex parte Young*, 209 U.S. 123 (1908) and its progeny . . . . In the context of challenges to lethal injection protocols, challenges based on the Eleventh Amendment have also been rejected."); *Thorson v. Epps*, No. 08-cv-129, 2009 WL 1766806, at *1 (N.D. Miss. June 22, 2009) ("Plaintiff seeks to enjoin the State from executing him under the existing lethal injection protocol, which he alleges is insufficient to address his current medical circumstances and insufficient to reduce the risk of an excruciating death . . . . Suits [like this one,] for prospective injunctive relief against a state official who is alleged to be acting in violation of federal law are not barred by the Eleventh Amendment."); *Miller v. Hamm*, 640 F. Supp. 3d 1220 (M.D. Ala. 2022) (Alabama attorney general was proper defendant under *Ex parte Young* where death row inmate alleged AG had authority to determine method of execution and used that authority in contravention of inmate's due process rights); *Mills v. Hamm*, 734 F. Supp. 3d 1226, 1244 (M.D. Ala. 2024) ("Defendants argue that *Ex parte Young* does not permit Mills' claims . . . against Governor Ivey because she has 'nothing to do with the challenged conduct.' But the[y] acknowledge that Governor Ivey sets execution timeframes" and "Mills asserts that prolonged restraint on the execution gurney violates his constitutional rights . . . . [This] is a permissible suit for injunctive relief against a state official

[Governor Ivey] with responsibility for and 'some connection' to the conduct alleged in Mills' complaint."); *Chester v. Beard*, 657 F. Supp. 2d 534, 545 (M.D. Pa. 2009) ("as Superintendent of the prison where executions . . . take place, Defendant Tennis is properly named because he will oversee Plaintiffs' executions at SCI–Rockview. Indeed, Plaintiffs alleged . . . that Defendant Tennis 'will supervise Plaintiffs' executions.' As Plaintiffs challenge . . . death-penalty protocol and specifically seek to enjoin the Commonwealth from executing them pursuant to such protocol, the Court finds that Plaintiffs have properly named Defendant Tennis as a party . . . ."); *Am. C.L. of Missouri Found. v. Lombardi*, 23 F. Supp. 3d 1055, 1061 (W.D. Mo. 2014) ("While Defendant does not appear to have direct power to enforce § 546.720, he does have the power to change the current execution protocol. . . . Defendant has a connection with an allegedly unconstitutional act because he has broad discretion to redefine the execution team . . . at any time . . . . Therefore, Defendant is involved with the enforcement of the execution protocol."); *McDaniel v. Precythe*, 897 F.3d 946, 952 (8th Cir. 2018) ("The Director has authority to implement the Missouri statute on execution witnesses, and she has implemented or is likely to implement the statute. As such, *Ex parte Young* permits McDaniel's suit challenging the constitutionality of the Director's implementation.").[13]

Despite *Ex parte Young*'s consistent application in like contexts, the State Defendants still insist it does not apply to *this* Eighth Amendment challenge. But it does.

**Compel or Constrain.** The State Defendants acknowledge that Secretary Westcott has the discretionary authority to choose an inmate's method of execution. (Doc. 30-2). What sets Wessinger's case apart, they argue, is *how* the Secretary now intends to exercise that discretion.

[13] The Court appropriately considers whether similar "injunction suits" have proceeded against prison officials under the *Ex parte Young* exception. *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) ("We have approved injunction suits against state regulatory commissioners in like contexts.") (collecting cases).

According to his Declarations, Secretary Westcott will give Wessinger the opportunity to elect lethal injection by pentobarbital. (Doc. 30-2). Allowing Wessinger to make this election, the State Defendants argue, "destroys any suggestion that the Secretary [will] compel[] Plaintiff's . . . . execut[ion] by nitrogen hypoxia." (Doc. 30-1 at 13 & n.2). But their total reliance on *how* Secretary Westcott intends to exercise his discretion in this single instance is misguided.

Even when a statute affords discretion, the focus should ultimately be on whether it includes mandatory language requiring the named official to act. *See Healthy Vision Assoc. v. Abbott*, 138 F.4th 385, 397 (5th Cir. 2025) ("The emphasis should be on '*shall*,' which indicates that however much discretion the Commissioner may have as to the details, enforcement of the statute is mandatory."). With that principle in mind, "the Court will [first] look to the text of [the relevant] Louisiana Revised Statutes" and DPSC protocol "to determine whether [Westcott] is the proper defendant in this matter."[14] *League of Women Voters of Louisiana v. Landry*, 2026 WL 3307736, at *22 (M.D. La. Nov. 2, 2026) (citing *Book People, Inc.*, 91 F.4th at 335). As the Court will explain, Secretary Westcott's connection to enforcement of the challenged law far exceeds the "scintilla of enforcement" required by *Ex parte Young*.

---

[14] The Louisiana Supreme Court has laid out the following guidelines for interpreting statutes:

> Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent. When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. The starting point for interpretation of any statute is the language of the statute itself. Additionally, all laws pertaining to the same subject matter must be interpreted *in pari materia*, or in reference to each other. When, on the other hand, a statute is not clear and unambiguous, or its application leads to absurd consequences, we rely on secondary rules of statutory interpretation to discern the meaning of the statute at issue. In such cases, the statute must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.

*Pierce Founds., Inc. v. Jaroy Const., Inc*., 190 So. 3d 298, 303 (La. 2016).

Generally, the "secretary shall serve as the executive head and chief administrative officer of [DPSC]" and "shall" be responsible for DPSC's "policies." La. Rev. Stat. § 36:403. But specifically, Louisiana Revised Statute 15:569 provides that every death sentence in the state "shall be executed at the Louisiana State Penitentiary at Angola" and that at the "discretion of the secretary of the Department of Public Safety and Corrections . . . every sentence of death shall be by one of the [authorized] methods"—lethal injection, nitrogen hypoxia or electrocution. La. Rev. Stat. § 15:569(A). Elsewhere, that statute makes clear that the Secretary of DPSC—Defendant Westcott—will receive a "warrant *commanding*" him to "cause the execution" and he "shall" give the condemned person written notice of his chosen "manner of execution" within seven days. La. Rev. Stat. § 15:569(B); *see also* La. Rev. Stat. § 15:567(B) ("issue a warrant commanding the secretary to cause the execution"). Louisiana law further commands: "The secretary of [DPSC], or a competent person *selected by him*, *shall* execute the offender . . . ." La. Rev. Stat. § 15:568 (emphasis added). Secretary Westcott "shall" also determine the number of execution witnesses, select any additional witnesses, and notify the victim's family of the execution's date and time. La. Rev. Stat. §§ 15:570(A) and (E).

Clearly Louisiana law vests Secretary Westcott with the authority to "compel or constrain the conditions" of Wessinger's execution, "power to implement" the execution protocol, and "supervisory authority over the people who [will] more directly" carry out Wessinger's execution. *Washington v. McLane*, 2025 WL 400030, at *3 (5th Cir. Feb. 5, 2025) (where named state officials had "direct governing authority" over relevant employees at civil confinement facility, and "final say over proposed" marriages between persons in civil confinement, suit against state officials "was analogous to suits against prison wardens, which have long been deemed acceptable under *Ex parte Young*."); *Hoffman v. Jindal*, No. 12-cv-796-JJB, 2013 WL 1637244, at *7 (M.D. La. Apr.

16, 2013) ("the Secretary [of DPSC] is charged with executing condemned prisoners and the Warden(s) are charged with overseeing the execution. Thus, the Court finds that Hoffman and Sepulvado can maintain 1983 actions as to these Defendants."); *Thorson*, 2009 WL 1766806, at *1 (same); *Miller v. Hamm*, 640 F. Supp. 3d (Alabama attorney general was proper defendant under *Ex parte Young* where death row inmate alleged AG had authority to determine method of execution and used that authority in contravention of inmate's due process rights); *McDaniel v. Precythe*, 897 F.3d 946, 952 (8th Cir. 2018) ("The Director has authority to implement the Missouri statute on execution witnesses, and she has implemented or is likely to implement the statute. As such, Ex parte Young permits McDaniel's suit challenging the constitutionality of the Director's implementation.").

Secretary Westcott's Declaration only corroborates his statutory authority. (Doc. 30-2 at 2) ("I am responsible for selecting the manner of execution . . . ."). And Defendants themselves consistently explain: "Only the Secretary [] knows what he intends to do if and when a warrant of execution issues for Plaintiff . . . . [After all,] Louisiana law charges the Secretary with the responsibility of selecting the manner of execution."[15] (Doc. 30-1 at 7). The Court agrees.

What's more, the statutes' repeated use of the word "shall" is significant—it imposes a mandatory duty on Westcott to carry out the execution in accordance with Louisiana law. *See Auricchio v. Harriston*, 332 So. 3d 660, 663 (La. 2021) ("Under well-established rules of interpretation, the word 'shall' excludes the possibility of being 'optional' or even subject to 'discretion,' but instead means 'imperative, of similar effect and import with the word 'must.'").

[15] In fact, Warrants of Execution issued in Louisiana explicitly direct "the Secretary of the Department of Public Safety and Corrections, State of Louisiana, to cause the execution of the condemned person . . . in the manner provided by law." Warrant of Execution, *State v. Wessinger*, No. 12-95-657 (19th JDC, issued March 2, 2012); *see also* Warrant of Execution, *State v. Hoffman*, No. 265637 (22nd JDC, issued Feb. 12, 2025) ("To: Honorable Gary Westcott, Secretary [of DPSC] . . . I, Alan Zaunbrecher, Juddge of the 22nd Judicial Court . . . do hereby direct and command you to cause the execution of Jessie D. Hoffman . . . in the manner provided by law."); Warrant of Execution, *State v. Hoffman*, No. 265637 (22nd JDC, issued Dec. 5, 2000) (same).

Nonetheless, the State Defendants emphasize Westcott's discretion to choose the method of execution. According to them, Westcott has insulated himself from suit by declaring he will choose pentobarbital if Wessinger makes that election.

But Defendants "put[] the emphasis in the wrong place." *Healthy Vision Assoc.*, 138 F.4th at 397. For purposes of *Ex parte Young*, "[t]he emphasis should be on '*shall*,' which indicates that however much discretion [state official] may have as to the details, enforcement of the statute is mandatory." *Id.* (however much discretion defendant had as to the details, his enforcement was mandatory nonetheless); *see also Oubre v. Louisiana Citizens Fair Plan*, 79 So. 3d 987, 999 (La. 2011) ("In accord with the well-established rules of statutory construction, by using the word "shall," the Legislature through this provision imposed a mandatory duty."); La. Rev. Stat. § 1:3 (When used throughout Louisiana's Revised Statutes, "[t]he word 'shall' is mandatory and the word 'may' is permissive.").

Here, Westcott has discretion over the details—i.e., the method of execution to be used—which can include him choosing the alternative proposed by Wessinger, or one of the methods Wessinger challenges as unconstitutional. But the relevant statute still *commands Westcott* to make the choice and to carry out the execution using one of the authorized methods—which includes not only pentobarbital, but the two methods Wessinger has "plausibly alleged to constrain" his right to be free from cruel and unusual punishment. *Healthy Vision Assoc.*, 138 F.4th at 397.

**Demonstrated Willingness.** The Court is already beyond satisfied that the named officials are proper Defendants under *Ex parte Young*. Nonetheless, it will briefly address the State Defendants' remaining immunity argument, which again relies entirely on Westcott's Declarations:

> That the Secretary will not execute Plaintiff with nitrogen hypoxia if Plaintiff elects to be executed by his preferred alternative, pentobarbital, sufficiently negates the charge of a demonstrated willingness to enforce that method of execution.

(Doc. 30-1 at 13 & n.2). "To determine whether an official has demonstrated a willingness to enforce a challenged statute, we consider the prior or contemporaneous affirmative acts of the named official." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 330 (5th Cir. 2024). With that in mind, Westcott's Declaration confirms, rather than forecloses, his demonstrated willingness to execute Wessinger by one of the challenged methods.

To start, Westcott has affirmatively declared in *this* litigation: "[I]n general, I will choose nitrogen hypoxia." (Doc. 30-2 at 3). That statement requires no analysis, no logical leap or even a guess as to whether Westcott is willing to enforce the challenged law. Reasonably, we could end this discussion right where it began. But continuing on, the State has only carried out one execution[16] since its statute was amended in 2024 to authorize nitrogen hypoxia and electrocution, in addition to lethal injection. As to that execution:

> Pursuant to La. R.S. 15:569, the method of execution will be by nitrogen hypoxia.
>
> Respectfully,
>
> Gary E. Westcott
>
> Gary E. Westcott, Secretary,
> Department of Public Safety and Correction, Corrections Services

Execution Notice, *Hoffman v. Westcott*, No. 25-cv-169 (M.D. La. filed Feb. 26, 2025), ECF No. 4-4; *see also Mi Familia Vota v. Ogg*, 105 F.4th 313, 329 (5th Cir. 2024) ("the state officials must have taken some step to enforce the statute. In deciding how big the step must be, the bare minimum appears to be 'some scintilla' of affirmative action by the state official. Such action may be shown through past enforcement of the statute.").

What's more, Westcott alone has authority over the method to be chosen. And if the Secretary truly wanted his sworn statement to "end[] this case," he could agree to be enjoined from

[16] The State of Louisiana executed Jessie Hoffman on March 18, 2025.

executing Wessinger by nitrogen hypoxia or the 2-drug lethal injection protocol. But he has not. His promised election still leaves open the possibility of Mr. Wessinger's execution by the challenged methods, and so it falls short of "negat[ing] a charge of demonstrated willingness." (Doc. 30-1 at 13 n.2). Finally, Westcott has not disavowed the challenged execution methods; to the contrary, he expressly refutes the present challenge and declares nitrogen hypoxia to be safe and humane. *Deep South Today v. Murrill*, 779 F. Supp. 3d 782, 812 (M.D. La. 2025) ("Like AG Murrill, Colonel Hodges and the State Police have not disavowed enforcing the Act. From these actions by AG Murrill and Colonel Hodges, the Court concludes that there is at least a scintilla of willingness to enforce. There is an expressed interest in protecting police officers, and it is likely that, should the opportunity arise, the Act will be enforced. AG Murrill's and Colonel Hodges's failure to disavow further lends to this conclusion.").

**Ex Parte Young.** Again, the Fifth Circuit has "discerned" *Ex parte Young*'s requisite "scintilla of enforcement in view of the constraining effect of an official's statutory duties." *Healthy Vision Assoc.*, 138 F.4th at 398. We do the same here. The named officials have the "specific and relevant duty" to enforce Louisiana's execution statute and protocols by selecting, implementing and carrying out the available methods of execution in Louisiana. *Id.* at 399. Under the circumstances, this "constraint in law" satisfies *Ex parte Young*. *Id.* at 399 ("[H]ere the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty are shown by the Commissioner's 'specific and relevant duty' to enforce H.B. 1696." Given the statutorily prescribed duty, a finding that "constraint in law were not enough [to trigger the exception] . . . would strain against our usual assumption that officials discharge their duties.").[17]

[17] Again, the State Defendants have only raised arguments concerning Westcott, although all three named Defendants have moved to dismiss. The Court has already addressed COO Smith and Warden Vannoy's sufficient connection to enforcement of the challenged law, rendering them amendable to suit under the exception of *Ex parte Young*.

**B. Justiciability**

The State Defendants argue, again based entirely on Westcott's Declarations, that Wessinger lacks Article III standing to challenge both the nitrogen hypoxia and 2-drug lethal injection execution protocols.

**Standing**. Article III, Section 2 of the Constitution confines the judicial power of federal courts to deciding actual "cases" or "controversies." An essential aspect of this requirement is that "any person invoking the power of a federal court must demonstrate standing to do so." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). This requires the "litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth*, 570 U.S. at 704. Because Westcott has declared that Wessinger can elect pentobarbital as his method of execution, Defendants insist "it is implausible to believe that Plaintiff faces any risk of execution by nitrogen hypoxia." (Doc. 30-1 at 14). And so, the challenged behavior is unlikely to occur and Wessinger faces no "concrete imminent injury." (Doc. 30-1 at 15).

But critical here, "a suit will not be dismissed for lack of standing if there are sufficient allegations of fact—not proof—in the complaint or supporting affidavits," *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 65 (1987), and standing is evaluated at the time the complaint is filed, *see Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed. . . . [T]he injury required for standing need not be actualized. A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct."). Mr. Westcott's declaration, on which Defendants' argument relies, came after (and indeed in response to) the complaint. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992)

("The existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed*.").

**Mootness.** And so, this is more appropriately understood as a mootness argument, the issue being whether Westcott's declaration is an intervening circumstance that resolves the case or controversy. *See Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 126 (2d Cir. 2020) ("While standing doctrine determines whether a plaintiff has a personal stake in the litigation when the complaint is filed, mootness doctrine determines what to do if an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation after its initiation. Defendants, however, cannot automatically moot this case simply by ending their unlawful conduct once sued."); *L.E. by & through Cavorley v. Scamihorn*, 187 F.4th 1266, 1274 (11th Cir. 2026) ("Post-filing events might well bear on mootness—but not standing").

A defendant claiming that its voluntary cessation "moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).[18] But here, the Court cannot find that the Westcott declaration moots Mr. Wessinger's complaint.

First, the State Defendants continue to couch Mr. Westcott's promise to use pentobarbital as part of an election to be made by Mr. Wessinger. But Louisiana's statute puts the choice of method of execution firmly in the hands of Mr. Westcott and does not allow delegation of that

[18] "By contrast, in a lawsuit brought to force compliance, it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the threatened injury is certainly impending." *Id.*

choice to the condemned.[19] Second, the State has repeatedly said that it will use a lethal injection of pentobarbital for Mr. Wessinger *if* he elects that method. But glaringly absent is an unequivocal promise that the State *will not*—whether now or anytime in the future—use nitrogen hypoxia or the challenged two-drug course of lethal injection to execute Mr. Wessinger. *See Tucker v. Gaddis*, 40 F.4th 289, 290 (5th Cir. 2022) (new policy created by named prison official merely "allows [plaintiff] to *apply* for a congregation. It does not in fact allow the Nation to congregate."). Third, when questioned about the enforceability of the Westcott declaration, State's counsel said that the declaration is enforceable *if* pentobarbital is available. Such a conditional statement leaves room for Mr. Wessinger to be executed by nitrogen hypoxia after all. Fourth, and relatedly, it was only after the Court questioned the State's possession of pentobarbital and its ability to procure the drug that Mr. Westcott provided a supplemental declaration indicating the State had secured a supplier and placed a monetary deposit on 15 mg of pentobarbital. But a deposit is not a completed transaction, and the State Defendants do not provide any details or documents confirming the existence of a supplier or deposit. *See Hoffman v. Jindal*, No. 12-cv-796, 2022 WL 969050, at *8 (M.D. La. Mar. 30, 2022) ("The depositions in this matter revealed that Attorney General Landry's press release misrepresented DOC's supply and access to lethal injection drugs. DOC does not have access to pentobarbital.").

[19] The State Defendants suggest that the only way Mr. Wessinger will be subject to execution by nitrogen hypoxia is if Wessinger himself fails to elect pentobarbital on the form created by Westcott in connection with the Motion to Dismiss. The Court disagrees. Only one individual in the State of Louisiana is statutorily authorized to choose among the legislatively approved methods of execution—the Secretary of LDPSC, Defendant Westcott. And he may exercise that discretion by choosing the same single-drug lethal injection protocol that Mr. Wessinger alleges to be a safer alternative when compared to the challenged methods. *See Nance v. Ward*, 597 U.S. 159, 164 (2022) (The inmate-plaintiff "must identify an alternative method that is feasible, readily implemented, and in fact significantly reduces" the risk of harm involved. Only through a comparative exercise, we have explained, can a judge decide whether the State has cruelly 'superadded' pain to the punishment of death."). But let's be very clear, it is Secretary Westcott's choice to make and his alone. *See Miller v. Hamm*, 640 F. Supp. 3d at 1243-44.

Unequivocal availability of pentobarbital matters because the state only authorized execution by electrocution or nitrogen hypoxia in 2024 *because* it has been unable to procure lethal injection drugs for more than a decade. Indeed, just last year the state told another judge in this Court that it remained unable to obtain drugs for lethal injection. *See Hoffman v. Westcott*, No. 25-cv-169-SDD-SDJ, 2025 WL 763945, at *2, *12 (M.D. La. Mar. 11, 2025) ("After years of being unable to conduct executions through lethal injection, the Governor on March 5, 2024, signed a law that adds nitrogen hypoxia [and electrocution] as a means of execution available to the DPSC . . . . At the hearing, COO Smith testified credibly that drugs used for executions are not available to the State."); *Hoffman v. Jindal*, No. 12-cv-796, 2022 WL 969050, at *8 (M.D. La. Mar. 30, 2022) ("At one time, [CO] [Seth] Smith contacted a compounding pharmacy in Oklahoma, but there was concern over a legal issue of whether an out of state pharmacy could be used. Also, a media outlet exposed the contact through a public records request and the source became unobtainable. He made quite a few contacts with compounding pharmacies throughout the region, but the media attention dissuaded interest. One deal fell through with a Louisiana pharmacy because the raw materials suddenly became unavailable; another because the pharmacy closed. He has not continued to reach out to the same potential sources because nothing has changed. No one is willing to sell Louisiana DOC the drugs, compounding or otherwise."). This sudden change in circumstance has not been explained.

Finally, while Defendants argue that Westcott's statement is punishable by perjury, this is not a remedy available to Mr. Wessinger—if Mr. Westcott does, in the end, choose to execute Mr. Wessinger by nitrogen hypoxia, he might be found guilty of perjury, but Mr. Wessinger will be dead. And he cannot be resuscitated and relieved of the suffering he alleges will be caused by nitrogen hypoxia after the fact.

For all of these reasons, the Court finds no surefire guarantee that Mr. Wessinger *will not* be executed by the challenged methods, and so his complaint remains justiciable, despite Mr. Westcott's statements. *See Tucker v. Gaddis*, 40 F.4th 289, 290 (5th Cir. 2022) (new policy created by named prison official merely "allows [plaintiff] to *apply* for a congregation. It does not in fact allow the Nation to congregate.").

**Premature or Speculative.** To the extent that the State Defendants' standing argument is that Mr. Wessinger's challenge is premature or merely "speculative" because the State has not yet issued a death warrant and has not yet chosen a method of execution, filing suit ahead of a death warrant is not only stock standard, but best practice, in this type of litigation. As the Middle District of Alabama recently explained, "[g]iven the stakes involved in such litigation, death-sentenced inmates are best served by filing their claims as early as possible, giving the parties as much time . . . to litigate . . . without having to seek emergency injunctive relief." *Boyd v. Hamm*, No. 25-cv-529, 2025 WL 2884410, at *25 (M.D. Ala. Oct. 9, 2025). The Fifth Circuit has likewise held that inmates could challenge the manner of their execution under § 1983, even though no execution date had been set. *See Whitaker v. Livingston*, 597 F. App'x 771, 774 (5th Cir. 2015).

To the Court's knowledge, a Death Warrant has not been issued for Mr. Wessinger's execution. Yet Mr. Wessinger's alleged injury is neither speculative nor premature. The State has made its intent clear, both in this litigation (the Motion to Dismiss acknowledges "he will soon be duly executed in Louisiana for his crimes" (Doc. 30-1 at 1)), and various public statements by the Governor and District Attorney regarding Mr. Wessinger's imminent execution.[20] And Mr.

[20] *See* DA Hillar Moore intends to sign death warrant for convicted killer Todd Wessinger after failed appeal (WBRZ, published Oct. 6, 2026) (Available at: https://www.wbrz.com/news/da-hillar-moore-intends-to-sign-death-warrant-for-convicted-killer-todd-wessinger-after-failed-appeal/);
Louisiana governor, judge reject Todd Wessinger's requests to reconsider death penalty (NOLA.com, published Oct. 14, 2026) (Available at: https://www.nola.com/news/courts/louisiana-governor-judge-reject-todd-wessinger-s-requests-to-reconsider-death-penalty/article_f784ca24-468d-5b78-a6d9-c5f2b93c2e48.html).

Westcott's sworn statement to this Court indicates that, left to his own devices, he will always choose nitrogen hypoxia. Likewise, a recent new article reports:

> As recently as July 20, [Secretary Westcott] swore in a different case that drug companies' restrictions were the reason Louisiana couldn't obtain execution drugs. Asked if he would switch back from nitrogen hypoxia if he could, Westcott demurred: 'I would use nitrogen hypoxia every time. 100 out of 100,' he said. 'I would never choose lethal injection or electrocution as long as I'm secretary.'

Patrick Sloan-Turner, *Louisiana has Secured Supply of Lethal Injection Drug, Corrections Official Says* (Times Picayune | Nola.com, Oct. 29, 2026).[21] Just last year this willingness to employ the nitrogen hypoxia protocol was put into practice, ending the State's decade-long inability to carry out executions due to lack of lethal injection drugs. Because the Court finds that Mr. Wessinger's Complaint is neither merely speculative nor premature, the Motion to Dismiss based on lack of standing is **DENIED**.

### C. Successive Habeas

Finally, the State Defendants argue that the Complaint is more properly read as a successive habeas petition and should therefore be dismissed. This argument is grounded in the idea that Mr. Wessinger's challenge to the method of execution is meritless and should be viewed as an attempt to evade execution altogether. Mr. Wessinger argues nothing of the sort and, as discussed above, is pursuing a legitimate challenge to the method of execution. He challenges not the validity of a death sentence, but only the State's mode of carrying it out." *Nance v. Ward*, 597 U.S. 159, 172 (2022) ("[T]he claim belongs in § 1983 because . . . it challenges not the validity of a death sentence, but only the State's mode of carrying it out. . . . The State, assuming it lost the suit, would then have to modify its law to go forward with the execution. But the nature of the suit would still

[21] Available at: https://www.nola.com/news/courts/gary-westcott-pentobarbital-lethal-injection-louisiana-todd-wessinger/article_54695eb6-c255-43cb-aaee-cd0179969d44.html (last visited: November 14, 2026).

be the same. The complaint would still ask to adjust only a matter of implementation . . . ."). Accordingly, Motion to Dismiss (Doc. 30) on the basis of successive habeas petition is **DENIED**.

## IV. CONCLUSION

For the reasons discussed in this written Ruling, and as reiterated by the Court (on the record) during the November 16, 2026 Conference, this Court has subject matter jurisdiction to hear Mr. Wessinger's Eighth Amendment claim against the State Defendants and their Motion to Dismiss (Doc. 30) under Rule 12(b)(1) of the Federal Rules of Civil Procedure is **DENIED**.

Signed in Baton Rouge, Louisiana, on November 17, 2026.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**