**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TODD WESSINGER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-957-JWD-SDJ** |
| **GARY WESTCOTT, et al.** | |

**ORDER DENYING THE STATE'S MOTION TO STAY AND CERITFYING INTERLOCUTORY APPEAL AS FRIVOLOUS AND TACTICAL**

Currently before the Court is the State Defendants' Expedited Motion to Stay (Doc. 38) discovery pending their interlocutory appeal of this Court's denial (Doc. 35) of their Motion to Dismiss (Doc. 30) based on sovereign immunity. Plaintiff, Todd Wessinger, has filed an Opposition in response to the Motion to Stay. (Doc. 47). For the reasons given below, the Court denies the Motion to Stay (Doc. 38). Instead, the Court will retain concurrent jurisdiction throughout the interlocutory appeal, as it now certifies in writing to the United States Court of Appeals for the Fifth Circuit that the immunity appeal is both frivolous and merely tactical.

**A. Background**

On November 17, 2026, the Court issued a written Ruling and Order denying the State Defendants' Motion to Dismiss for lack of subject matter jurisdiction (Doc. 30), in which the Court wholly rejected the assertions of sovereign immunity. (Doc. 35). Because the Court had previously stayed discovery pending its resolution of the sovereign immunity issue (Doc. 24), within an hour of its Ruling and Order, it separately issued the following: (1) an Order lifting its prior stay and instructing the parties to immediately begin pursuing discovery in earnest (Doc. 39); and (2) a

revised expedited Scheduling Order that provided for 60 days of discovery ahead of a 3-day trial beginning on March 22, 2026 (Doc. 40).

Also within an hour of the Court's November 17, 2026, denial of the Motion to Dismiss, the State filed both a Notice of Interlocutory Appeal (Doc. 37) and a Motion to once again stay discovery (Doc. 38). According to the State, this Court has a " 'non-discretionary duty' to invoke [its] power" to stay discovery because the State has filed an interlocutory appeal of the denial of sovereign immunity. (Doc. 38-1 at 3).[1]

**B. Discussion**

Generally speaking, the State's interlocutory appeal would act to divest this Court of jurisdiction and warrant a stay pending the Fifth Circuit's resolution of appeal. *See United States v. Dunbar*, 611 F.2d 985, 987 (5th Cir. 1980) ("Historically, the filing of a notice of appeal has generally given the appellate court sole jurisdiction and divested the trial court of jurisdiction to

[1] The State relies on *In re Paxton*, 60 F.4th 252, 256 (5th Cir. 2023). (Doc. 38-1 at 3). But it either misreads *In re Paxton* or simply ignores its distinct procedural posture. There, the Fifth Circuit granted mandamus after the district court deferred its consideration of Ken Paxton's motion to dismiss for sovereign immunity, allowing Paxton's deposition to go forward before resolving the immunity issue. The need to first determine subject matter jurisdiction was the "non-discretionary duty" described in *In re Paxton*. *In re Paxton*, 60 F.4th at 256 ("A district court's obligation to consider a challenge to its jurisdiction is non-discretionary."). For that reason, the district court had also abused its *discretionary* power to stay discovery, by allowing Paxton's deposition to proceed before resolving the issue of sovereign immunity. Texas then successfully sought a writ of mandamus, preventing the deposition before the resolution of the motion to dismiss based on sovereign immunity. Here, the Court did just as the Fifth Circuit instructed in *In re Paxton*—it stayed discovery while it first resolved the State Defendants' Rule 12(b)(1) Motion to Dismiss, in which they asserted sovereign immunity. Only after it resolved the issue of sovereign immunity against the State Defendants did the Court allow discovery to begin.

Further, while the State characterizes the divestment of jurisdiction as "automatic" and "non-discretionary," it fails to mention the well-recognized frivolity exception that is, indeed, mentioned in many of the cases the State cites in support of unequivocal divestment. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 745 (2023) ("In addition, nearly every circuit has developed a process by which a district court itself may certify that an interlocutory appeal is frivolous."); *Williams v. Brooks*, 996 F.2d 728, 729–30 (5th Cir. 1993) ("A number of other circuits have addressed the precise issue on this appeal and have uniformly held that the filing of a **non-frivolous** notice of interlocutory appeal following a district court's denial of a defendant's immunity defense divests the district court of jurisdiction to proceed against that defendant" (emphasis added), and citing cases explicitly recognizing the frivolity exception); *Greenwald v. Cantrell*, No. 22-2371, 2024 WL 5043080, at *1 (E.D. La. Dec. 9, 2024) ("[T]he filing of a **non-frivolous** notice of interlocutory appeal following a district court's denial of a defendant's immunity defense divests the district court of jurisdiction to proceed against that defendant" (emphasis added), and citing *Williams*, 996 F.2d at 730); *Russell v. Harris Cnty., Texas*, No. 19-226, 2021 WL 2637576, at *2 (S.D. Tex. June 25, 2021) ("[B]ecause the felony judges have raised a **nonfrivolous sovereign immunity issue** on appeal, a stay is appropriate." (emphasis added)).

proceed with the case."). But "such divestment is neither automatic nor absolute," despite the State's insistence. *Salcido as Next Friend of K.L. v. Harris Cnty., Texas*, No. 15-2155, 2018 WL 6618407, at *11 (S.D. Tex. Dec. 18, 2018) (citing *BancPass, Inc. v. Highway Toll Administration, L.L.C.*, 863 F.3d 391 (5th Cir. 2017). "Instead, a number of circuits have recognized that a court may exercise its discretion to proceed to trial despite an interlocutory appeal [of immunity] in certain cases, including where an appeal is frivolous or used to manipulate proceedings." *Saenz v. Flores*, No. 14-cv-244, 2018 WL 3603111, at *1 (W.D. Tex. June 5, 2018). Indeed, the "Fifth Circuit has held that 'a district court is permitted to maintain jurisdiction over an interlocutory appeal of an immunity denial after certifying that the appeal is frivolous or dilatory.'" *Gruver v. Louisiana Through Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. 18-cv-772-SDD-EWD, 2019 WL 6245421, at *3 (M.D. La. Nov. 22, 2019) (quoting *BancPass*, 863 F.3d at 400); *see also Saenz*, 2018 WL 3603111, at *2 ("[A] district court must provide written certification and make an express finding of frivolousness in the immunity context in order for a court to not be deprived of jurisdiction."). "Importantly, this rule is a permissive one: the district court may keep jurisdiction, but is not required to do so." *BancPass*, 863 F.3d at 400.

Because the district court is typically "divested of jurisdiction to proceed to trial by the filing of a notice of interlocutory appeal raising [an immunity] issue, there is the risk that such interlocutory appeals will be subject to abuse." *Stewart v. Donges*, 915 F.2d 572, 576 (10th Cir. 1990). For example, a defendant claiming immunity may "seek to stall because they gain from delay at plaintiffs' expense, an incentive yielding unjustified appeals. . . . Proceedings masquerading as [immunity] appeals but in fact not presenting genuine claims of immunity" may further warrant certification as tactical or manipulative. *Apostol v. Gallion*, 870 F.2d 1335, 1338–39 (7th Cir. 1989). And so, "[w]here the disposition is so clearly correct that nothing can be said

on the other side," *Lewis v. Rosenberg Police Dep't*, No. 22-cv-2593, 2025 WL 3493902, at *2 (S.D. Tex. Apr. 8, 2025), or where "the claim of immunity is a sham," district courts have certified interlocutory appeals as frivolous, *Apostol*, 870 F.2d at 1339. This "power" to certify "must" ultimately "be used with restraint" by district courts. *BancPass*, 863 F.3d at 400. However, its use is appropriate where the district court would otherwise be left "helpless in the face of manipulation. . . ." *Apostol*, 870 F.2d at 1339.

**Frivolous.** Here, a certification that the State Defendants' interlocutory appeal is frivolous flows unavoidably from this Court's reasons denying their Motion to Dismiss. As the Court ultimately concluded, the State Defendants truly "rais[ed] a mootness argument"—one they simply "dressed up as a challenge to sovereign immunity and standing." (Doc. 35 at 4-5); *See BancPass*, 863 F.3d at 399 (When "[p]roceedings masquerading as [immunity] appeals but in fact not presenting genuine claims of immunity" are present "a district court may certify to the court of appeals that the appeal is frivolous and get on with the trial.").

Indeed, the State's entire immunity argument is premised on a Declaration that Secretary Westcott only submitted in response to the Complaint,[2] in which he attempts to eliminate Wessinger's Eighth Amendment challenge to nitrogen hypoxia[3]—post-filing—by promising he will allow Wessinger to elect pentobarbital as the method of execution.[4] But Secretary Westcott's promise, by his counsel's own admission, is non-binding, as it depends on the State's actual procurement of pentobarbital. (Doc. 24). Critical here, this Declaration and the alleged promise it contains, only materialized *after* the Complaint was filed (and indeed in response to the Complaint)

[2] The same is true of the State Defendants' standing argument—it is entirely based on Westcott's Declaration.

[3] Wessinger also challenges the 2-drug lethal injection protocol authorized by the State. The State likewise claims that Westcott's Declaration eliminates Mr. Wessinger's eighth amendment challenge to the 2-drug lethal injection protocol, as well.

[4] (Doc. 35 at 3) ("[B]ecause Wessinger's Complaint identifies pentobarbital as a safer alternative, Westcott will now take the novel approach of allowing Wessinger—the condemned inmate—to elect lethal injection by pentobarbital.").

to render the Eighth Amendment claim non-justiciable. Therefore, as the Court's Ruling and Order explained in detail, the State has clearly made a mootness argument based on a post-filing event (the Declaration). (Doc. 35 at 19) ("And so, this is more appropriately understood as a mootness argument, the issue being whether Westcott's declaration is an intervening circumstance that resolves the case or controversy") (citing *L.E. by & through Cavorley v. Scamihorn*, 187 F.4th 1266, 1274 (11th Cir. 2026) ("Post-filing events might well bear on mootness—but not standing")).

Beyond that, the three named Defendants are frequently sued without immunity in method of execution claims. (Doc. 35 at 10) ("To be sure, prison officials are not precluded from asserting sovereign immunity. But when they have claimed that immunity bars an inmate from challenging a state's method of execution or execution protocols, courts have found that claim bears 'no merit under Ex parte Young, 209 U.S. 123 (1908) and its progeny.' "); *see also Hoffman v. Jindal*, No. 12-cv-796-JJB, 2013 WL 1637244, at *8 (M.D. La. Apr. 16, 2013) ("Defendants further argue that this action is barred by the Eleventh Amendment and this Court lacks jurisdiction to hear this dispute. However, this argument has no merit under Ex parte Young, 209 U.S. 123 (1908) and its progeny . . . . In the context of challenges to lethal injection protocols, challenges based on the Eleventh Amendment have also been rejected.").

Secretary Westcott's Declaration does not change the calculation, as the State Defendants insist. (Doc. 30-1 at 13 & n.2) (arguing that the Declaration's promise to allow Wessinger to 'elect' pentobarbital "destroys any suggestion that the Secretary [will] compel[] Plaintiff's . . . . execut[ion] by nitrogen hypoxia."). For purposes of *Ex parte Young*, the focus is not on "*how* Secretary Westcott intends to exercise his discretion in this single instance" but whether the relevant statute "includes mandatory language requiring the [Secretary Westcott] to act." (Doc. 35 at 12). And as the Court's Ruling explained, the relevant statutes and protocols contain mandatory

language vesting Secretary Westcott with authority to "compel or constrain the conditions of Wessinger's execution, power to implement the execution protocol, and supervisory authority over the people who will more directly carry out Wessinger's execution." (Doc. 35 at 13). The law therefore requires Secretary Westcott to act—i.e., carry out the execution in accordance with Louisiana law—and his Declaration does not change the duty that is clearly prescribed by Louisiana law. Westcott's assertion of sovereign immunity in the Motion to Dismiss, and now on appeal, is clearly frivolous.

To the extent the State argues that the Declaration eliminates Westcott's willingness to enforce the challenged method,[5] the admittedly conditional promise to allow Wessinger to elect his own method of execution falls short of a guarantee that the State *will not* use nitrogen hypoxia on Wessinger before the constitutionality of that method has been considered. *Contra Mi Familia Vota v. Ogg*, 105 F.4th 313, 330-31 (5th Cir. 2024) ("Ogg never enforced the challenged provisions in the past, …. [And s]he has attested that she will not attempt to enforce the challenged provisions until this suit is over. Although we have not ruled on this previously, other circuits have held that officials' attestations that they will not enforce a challenged statute while litigation over its constitutionality is ongoing sufficiently negates the charge of a demonstrated willingness to enforce."). The State's prior use of nitrogen hypoxia, *see Hoffman v. Westcott*, 131 F.4th 332 (5th Cir. 2025), is clear evidence of the named officials' demonstrated willingness to use the challenged method. *Ogg*, 105 F.4th at 329 ("[Willingness to enforce] may be shown through past enforcement of the statute.). Westcott's Declaration and other statements clearly demonstrate his willingness to

[5] The State argues that the "willingness to enforce" guidepost is necessary to a finding that the *Ex parte Young* exception applies. *See, e.g.,* Doc. 32 at 7. This Court explained in its Order Denying the Motion to Dismiss (Doc. 35 at 9-10) that the guideposts go to the question of "sufficient connection to enforcement" and need not be reached where the named official's connection to enforcement is abundantly clear, as it is for Secretary Westcott. Nevertheless, the Court explains here that Westcott has not sufficiently negated his willingness to enforce the challenged method of execution.

enforce the challenged method. *See* Doc. 35 at 22-23. And although the State swears it will use pentobarbital, the door remains open for use of nitrogen hypoxia. Even if an execution warrant is issued and the method designated is pentobarbital, an intervening circumstance, e.g., a hiccup in the pentobarbital storage or supply chain, could see the State relying on its backup method. *See* Motion to Dismiss, Doc. 19-1 at 15 (The State has acknowledged the possibility that pentobarbital may not be available in the future, and: "At that time, nitrogen hypoxia may be the only feasible method of execution"). And so, Westcott has clearly taken "some scintilla of affirmative action" toward enforcement of the challenged method, *Ogg*, 105 F.4th at 329 (internal quotation omitted), and has not sufficiently negated the charge of willingness to enforce that method.[6]

What's more, the State raised absolutely no arguments in their Motion to Dismiss with respect to the two remaining State Officials—COO Seth Smith and Warden Darrel Vannoy[7]—further compounding the frivolity of the appeal taken on their behalf. (Doc. 35 at 17 n.17) ("Again, the State Defendants have only raised arguments concerning Westcott, although all three named Defendants have moved to dismiss."); *see also In re Vioxx Prods. Liab. Litig.*, 529 Fed. App'x 396, 396 n.1 (5th Cir. 2013) ("We can find no indication in the record that Plaintiff–Appellant made this argument in the district court. Keeping with our well-settled rule that arguments not raised

[6] If "the bare minimum [to demonstrate willingness to enforce] appears to be 'some scintilla' of affirmative action by the state official," *Id.*, then it must follow that in order to negate that willingness, the state official must eliminate every trace of that affirmative action. Here, by leaving open the possibility of execution by nitrogen hypoxia, Westcott fails to negate his willingness. And the State has had ample opportunity to make an affirmative statement like the one Ogg made in *Ogg* (*supra*); such a statement could sufficiently extinguish the alleged ongoing violation, and would likely bring this litigation to a swift end. The State has chosen not to do so. *Cf.* AG Counsel's statement, *infra* at 9, that the State will not commit to executing Mr. Wessinger only after trial.

[7] Nonetheless, the Court still thoroughly "addressed COO Smith and Warden Vannoy's sufficient connection to enforcement of the challenged law, rendering them amendable to suit under the exception of Ex parte Young." (Doc. 35 at 17 n.17); *see also* (Doc. 35 at 8 n.10) (explaining why "it is clear" from the relevant statutes and the Complaint "that both Warden Vannoy and Chief Smith are properly named Defendants with a sufficient connection to enforcement of Louisiana's execution statute and protocol").

before the district court are waived and cannot be raised for the first time on appeal, we do not address the argument.").

For these reasons and those already stated in this Court's Ruling and Order denying sovereign immunity (Doc.35), the Court finds and now certifies the State Defendants' interlocutory appeal of that denial is frivolous and without merit.

**Tactical Manipulation.** Beyond that, the Court finds the interlocutory appeal is also a "stall" tactic meant to prevent Mr. Wessinger from having a fully developed record on which to litigate his Eighth Amendment challenge to the State's methods of execution.

At the outset of this litigation, the Court held a conference with the parties on September 23, 2026. (Doc. 11). First, the Court explained it would expedite this proceeding, given the Governor and District Attorney's public statements about their intent to seek a death warrant for Mr. Wessinger. But because there was not yet a death warrant (or date of execution), Mr. Wessinger had (it seemed) filed early enough that the parties could conduct sufficient fact and expert discovery to create a full record on which to decide the Eighth Amendment claim. He also appeared to be avoiding the procedural posture in which most method of execution cases are presented—through an emergency motion for preliminary injunction. *See Boyd v. Hamm*, No. 25-cv-529-ECM, 2025 WL 2884410, at *25 (M.D. Ala. Oct. 9, 2025) ("Given the stakes involved in such litigation, death-sentenced inmates are best served by filing their claims as early as possible, giving the parties as much time as possible to litigate their claims without having to seek emergency injunctive relief.").

Second, the Court asked the counsel whether the State intended to file a Rule 12 motion, instead of answering the complaint, given the quickly approaching response deadline and the need to resolve any motion on an expedited basis. Counsel for the State indicated that she did not yet

know of any plans to move for dismissal. (Doc. 11 at 3). The Court then advised that it would not entertain a stay of discovery simply because a Rule 12 motion was filed, assuming that motion would not be asserting sovereign immunity, for all the reasons stated above.

Knowing all of this, the State then sought dismissal based on its frivolous sovereign immunity claim and immediately filed a separate Motion to Stay Discovery pending the Court's resolution of its Rule 12 Motion. The Court then stayed discovery given the sovereign immunity claim. It resolved the Motion to Dismiss on an expedited basis and then immediately lifted the stay of discovery during a conference held on November 16, 2026. During that conference, the Court discussed amending the deadlines set by its initial Scheduling Order and the parties set a new trial date for March 22, 2026. And critical here:

| | |
|---|---|
| THE COURT: | . . . ARE YOU IN A POSITION TO ASSURE THE COURT THAT A DEATH WARRANT IS NOT GOING TO BE ISSUED UNTIL AFTER THE TRIAL? |
| [AG COUNSEL]: | I CAN NOT MAKE THAT ASSURANCE. |
| THE COURT: | ALL RIGHT. AND DO YOU KNOW WHAT THE STATE'S INTENTIONS ARE WITH RESPECT TO THE ISSUANCE OF THE DEATH WARRANT? |
| [AG COUNSEL]: | I -- I DO NOT KNOW AT THIS POINT. I DON'T BELIEVE THAT THERE HAVE BEEN ANY FIRM DECISIONS ONE WAY OR ANOTHER. |

(Transcript at 14:16-24, Doc. 45 at 14). And so, believing the lack of any "firm" plan to seek an execution warrant allowed enough time to conduct both fact and expert discovery, the Court issued an amended (yet, still expedited) Scheduling Order the very next day on November 17, 2026.

But just two days after the Conference—on November 18, 2026—the same AG counsel who claimed to be unaware of any "firm decisions one way or another" on the "State's intentions [] with respect to the issuance of the death warrant," signed and filed a Motion to Reset Execution

Date Pursuant to R.S. 15:567(C) in the 19th JDC. (Doc. 42-1). That Motion first represents that, as the State understands it, the 2012 stay of execution "expired on October 13, 2026"—more than a month ago. (Doc. 42-1 at 3). And because "there is no longer any stay of execution," the Motion provides:

> "The State hereby moves to reset the execution date pursuant to La. R.S. 15:567(C), which states 'the trial court shall reset the execution date within **thirty days' of the stay order's dissolution**' and . . . . . The State respectfully requests that an execution date of **December 18, 2026** be set."

(Motion to Reset Execution Date, Doc. 42-1 at 3). The State then filed a Notice of this Motion on this Court's docket. (Doc. 42).

The State's Notice does not explain why the same attorney who moved to reset the Execution date for December 18, 2026, had represented to this Court just *two days earlier* that she "did not believe" there had been "any *firm* decisions" to seek an execution warrant. And to be sure, there may be a perfectly reasonable explanation for this timing—things may have changed in the two days between the Conference and the Motion filed in the 19th JDC. But still, a perfectly reasonable explanation seems warranted and was not given in counsel's November 18th Notice.

The State has also not explained why, when it considered the prior stay of execution dissolved as of October 13, 2026, it then waited over a month—and only after this Court denied its Motion to Dismiss based on sovereign immunity and ordered the parties to immediately begin pursuing discovery in earnest—to finally move to reset Wessinger's execution date. What's more, the State moved for a new execution date of **December 18, 2026**, while simultaneously filing an interlocutory appeal on sovereign immunity and moving this Court to stay discovery pending the outcome.

The Court has a hard time not seeing these delay tactics as gamesmanship—a clear effort to prevent Mr. Wessinger the benefit of litigating (and the Court the benefit of resolving) this

Eighth Amendment challenge on a fully developed record and without the stress and haste inherent in a preliminary injunction proceeding. And indeed it would benefit the State to avoid conducting sufficient discovery, having a full record, and deciding this case on the merits.

Remember that Louisiana's nitrogen hypoxia protocol is a "carbon copy" of Alabama's—the only other state to have executed a condemned inmate using nitrogen hypoxia.[8] In *Grayson v. Commissioner*, the Eleventh Circuit affirmed the denial of a preliminary injunction to prohibit Alabama from executing Grayson by nitrogen hypoxia, finding the method did not constitute cruel and unusual punishment. *Grayson v. Commissioner, Alabama Dep't of Corr.*, 121 F.4th 894 (11th Cir. 2024). The following year, the Fifth Circuit relied on *Grayson* when it refused to enjoin Louisiana from executing Jessie Hoffman by nitrogen hypoxia. *Hoffman v. Westcott*, 131 F.4th 332 (5th Cir. 2025). Hoffman, who filed a preliminary injunction like Grayson, had "exactly one week" to prepare for the hearing. *Hoffman v. Westcott*, No. 25-cv-169, 2025 WL 763945, at *2 (M.D. La. March 11, 2025). In refusing to enjoin his execution, the Fifth Circuit found significant that Louisiana's protocol was modeled after Alabama's, which had been upheld by the Eleventh Circuit in *Grayson*. But earlier this year, the Eleventh Circuit considered a substantively similar, but procedurally distinct, challenge to Alabama's nitrogen hypoxia protocol in *Lee v. Commissioner, Alabama Department of Correction*, 2026 WL 1651147 (11th Cir. June 8, 2026). The district court in *Lee* had conducted a "three-day bench trial" on the constitutionality of nitrogen hypoxia—"the

[8] Alabama's protocol withstood multiple Eighth Amendment challenges where the inmate, due to time constraints, was forced to seek a preliminary injunction, depriving the district court and the inmate of a fully-developed record. Alabama has executed 7 people using nitrogen hypoxia, most of whom sought preliminary injunctions to enjoin their executions, challenging nitrogen hypoxia as cruel and unusual punishment. Each inmate making a challenge hastily proceeded to a preliminary injunction hearing, without the benefit of a full record, and was denied relief. The Middle District of Alabama did not reach the merits in any of those cases. *See Smith v. Hamm*, No. 23-cv-656, 2024 WL 116303 (M.D. Ala. Jan. 10, 2024); *Miller v. Marshall*, No. 24-cv-197, 2024 WL 2946093 (M.D. Ala. June 11, 2024); *Grayson v. Hamm*, No. 24-cv-376, 2024 WL 4701875 (M.D. Ala. Nov. 6, 2024); *Frazier v. Hamm*, No. 24-cv-732, 2025 WL 361172 (M.D. Ala. Jan. 31, 2025); *Boyd v. Hamm*, No. 25-cv-529, 2025 WL 2884410 (M.D. Ala. Oct. 9, 2025).

**first such trial** in the country." *Lee*, 2026 WL 1651147, at *1 (at trial, parties introduced "voluminous evidence," testimony from 7 lay and 4 expert witnesses, plus "hundreds of exhibits totaling thousands of pages"). "Under the facts found by the district court," the Eleventh Circuit held "Alabama's nitrogen hypoxia protocol presents a substantial risk of serious harm—severe pain over and above death itself." *Id.* at 8. The Eleventh Circuit distinguished both *Grayson and Hoffman*, in part, based on their procedural postures—both were preliminary injunctions, that never reached the merits, and lacked the benefits of sufficient discovery, full records or trials. *Id.* at *1, *7.

With the benefit of a full record, the Eleventh Circuit found a nitrogen hypoxia protocol identical to Louisiana's was cruel and unusual punishment in violation of the Eighth Amendment. The State of Louisiana, now faced with the same challenge to its "carbon copy" protocol, has taken efforts to moot this litigation by promising Secretary Westcott will allow Wessinger to *elect* pentobarbital—a drug they have not been able to procure for over a decade. But this promise rings hollow where it fails to: (1) provide evidence confirming the State physically has pentobarbital; (2) additionally guarantee that Louisiana will administer that pentobarbital under the safeguards detailed in paragraph 112 of the Amended Complaint;[9] or (3) take either of the challenged methods off the table, which could effectively end this litigation (see *supra* at n.6). *See BancPass*, 863 F.3d at 400 (recognizing that some "litigation tactics" are clearly "designed to avoid trial"). This interlocutory appeal seems the next logical step towards an ultimate goal—preventing a court from fully considering the constitutionality of Louisiana's nitrogen hypoxia protocol.

[9] The Amended Complaint specifically cites as its alternative method lethal injection by single-drug pentobarbital *with appropriate safeguards*. The State has not addressed these safeguards, and its promise to allow Wessinger to elect execution by pentobarbital contains no assurances as to the protocol by which such an execution would be carried out. Indeed, that protocol appears top of mind for Wessinger's counsel, *see* Doc. 49 at 4; but without the benefit of discovery, Wessinger can make no claims as to that protocol.

If we allow the State's gamesmanship, we will be stripped of jurisdiction through the pendency of the interlocutory appeal. What then happens if, for example, on the eve of Mr. Wessinger's execution the State finds itself unable to fulfill its promise to use pentobarbital and the appeal remains pending? This Court will be unable to act. And there will be no recourse for Mr. Wessinger, who will be subject to execution by nitrogen hypoxia—a method he alleges amounts to torture by conscious suffocation.

**C. Conclusion**

Ultimately, "where a court finds that an appeal is frivolous, or where the defendants use claims of immunity in a manipulative fashion, the district court may certify that the defendant has surrendered the entitlement to a pretrial appeal and proceed with trial." *League of Women Voters of Ohio v. Blackwell*, 432 F. Supp. 2d 742, 744 (N.D. Ohio 2006) (citations omitted). For the reasons detailed above, the Court must **DENY** the State's Expedited Motion to Stay Discovery Pending Appeal. (Doc. 38).

As the Court has thoroughly explained in both this Order, and in its denial of the Motion to Dismiss (Doc. 35), this Court has expressly found and now formally **CERTIFIES** that the State's interlocutory appeal on sovereign immunity, *see Wessinger v. Westcott*, No. 26-70014 (5th Cir. appeal filed Nov. 17, 2026), is both **frivolous** and **tactically manipulative**. *See BancPass*, 863 F.3d at 400 (the requirement of a "written certification and express finding of frivolous" is necessary and will enable the Fifth Circuit to review this determination and the State's appeal "as expeditiously as possible"). This Court will **RETAIN concurrent jurisdiction** over this litigation pending the State's interlocutory appeal.

Finally, the Clerk of Court for the Middle District of Louisiana is **directed** to immediately **provide** this **Order and Certification** to the Clerk of Court for the United States Court of Appeals

for the Fifth Circuit, referencing the applicable interlocutory appeal: *Wessinger v. Westcott*, No. 26-70014 (5th Cir. appeal filed Nov. 17, 2026).

Signed in Baton Rouge, Louisiana, on November 20, 2026.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**